## NATIONAL LABOR RELATIONS BOARD v. LONG LAKE LUMBER CO. et al.

### No. 10368.

Circuit Court of Appeals, Ninth Circuit.

Oct. 18, 1943.

Robert B. Watts, Gen. Counsel, Ernest A. Gross, Associate Gen. Counsel, Howard Lichtenstein, Asst. Gen. Counsel, and Owsley Vose, John H. Garver, and Robert T. McKinlay, Attys., N.L.R.B., all of Washington, D. C., for petitioner.

C. H. Potts, of Coeur d'Alene, Idaho, for respondent.

Before GARRECHT, STEPHENS, and HEALY, Circuit Judges.

HEALY, Circuit Judge.

The National Labor Relations Board petitions for our decree enforcing its order directed toward respondents. The order is predicated on findings that the respondents

interfered with and coerced their employees in the exercise of rights guaranteed under the National Labor Relations Act, 29 U.S.C.A. § 151 et seq., and refused to bargain collectively with a union—a local of International Woodworkers of America, affiliated with C. I. O.—to which most of the respondents' employees adhered. Respondents were ordered by the Board to desist from these practices, were directed to bargain collectively with the union upon request, and to offer reinstatement with back pay and to make whole the employees found to have been unlawfully discriminated against.

The jurisdiction of the Board is conceded, and it is not denied that the respondent Robinson engaged in the unfair labor practices charged. Admittedly the decree should be granted as against him. The single complaint is that the Board's order should have been directed against Robinson alone, it being contended by respondent Long Lake Lumber Company that Robinson was an independent contractor and the sole employer of the men affected.

The Long Lake Lumber Company has two mills at Spokane and obtains its logs in part from Caribou Basin in the neighborhood of Sandpoint, Idaho. Robinson had a contract with the Long Lake Company for the logging of standing timber owned by the Company at that place. His contract was terminable on thirty days' notice, and his payrolls and other operating expenses were financed by Long Lake. In June of 1939, not long after Robinson opened the particular logging operation, a representative of the International Woodworkers, aided by some of the employed men, commenced an organizational drive among the employees in the camp. Learning of this, Robinson declared he would fire every man who received a union card. He threatened to shut the camp down, saying that he could not "operate with that kind of organization at all." There followed a meeting of the Woodworkers local, to which a large majority of the men at that time undertook to adhere. At first Robinson declared he would not permit the meeting to be held in the camp, but later he withdrew his objections. Immediately after the union session, which was held in the evening, he met with a committee of the local and agreed to recognize it as the bargaining representative of the local's members, and in fact bargained with the committee on several matters at the time.

Later that evening Robinson was twice called on the telephone from Spokane by James Brown Sr., the president of the Long Lake Company. Brown's son, the assistant woods superintendent of the Company, arrived at the camp during the evening and conferred with Robinson. The following morning Robinson informed the employees that the camp was being shut down, and the men were instructed to turn in their tools and blankets. The Board attributed this abrupt change in attitude to instructions given Robinson by the Browns.

In protest against the shutdown the men went on strike, the camp was later picketed, and the organizational dispute dragged along for well over a month. There is additional evidence of Long Lake's active intervention in the affair, notably a declaration of Robinson's to the effect that "my hands are tied." According to one witness, Brown Jr. remarked that Robinson was indebted to Long Lake and to a bank for large sums and that "there isn't any chance of our getting our money back." The job, Brown Jr. is reported as saying, was too large for Robinson; there was too much friction between him and the camp, and "he is not the man to handle that job; we are going to take Frank [Robinson] and put him on another job." There is other testimony of the same general tenor, but we need not pursue it in detail. Enough to say that the showing manifests an attitude of hostility on the part of Long Lake toward the unionization of the logging camp by Woodworkers and that the evidence is indicative as well of a measure of domination by Long Lake inconsistent with the notion that Robinson was really a free agent either in handling the enterprise or in dealing with the men employed. Naturally there is much evidence on the other side, but it was for the Board to determine where the truth lay.

We think the record warranted the Board's treatment of Robinson and the Long Lake Company as joint employers. Cf. N.L.R.B. v. Grower-Shipper Vegetable Ass'n, 9 Cir., 122 F.2d 368, 377; N.L.R.B. v. Condenser Corp., 3 Cir., 128 F.2d 67; Butler Bros. v. N.L.R.B., 7 Cir., 134 F.2d 981. More particularly is the treatment appropriate since the term "employer" is defined in § 2 of the Act as including "any person acting in the interest of an employer, directly or indirectly * * *." Respondents rely on cases such as Williams v. United States, 7 Cir., 126 F.2d 129, in-

volving the employer-employee relationship as interpreted in the administration of the Social Security Act of 1935, 42 U.S.C.A. § 301 et seq., and the regulations thereunder. In this connection compare our own discussion of that problem in Anglim v. Empire Star Mines Co., 129 F.2d 914. For obvious reasons decisions involving that Act are not apposite here.

Decree will be entered in conformity with the order of the Board.