## NATIONAL LABOR RELATIONS BOARD

v.

## DAYTON COAL & IRON CORP. et al.

No. 11868.

United States Court of Appeals Sixth Circuit.

Dec. 11, 1953.

William J. Avrutis, Washington, D. C. (George J. Bott, Gen. Counsel, David P. Findling, Associate Gen. Counsel, A. Norman Somers, Asst. Gen. Counsel, Elizabeth W. Weston, Atty., N. L. R. B., Washington, D. C., on the brief), for petitioner.

Jere T. Tipton, Chattanooga, Tenn. (Walter H. Cheers, Dayton, Tenn., John L. Lenihan, Chattanooga, Tenn., of counsel; Miller, Martin, Hitching & Tipton, Chattanooga, Tenn., on the brief), for respondents.

Before SIMONS, Chief Judge, and ALLEN and MILLER, Circuit Judges.

PER CURIAM.

This case arises upon petition of the National Labor Relations Board for enforcement of its order issued December 2, 1952, against the respondents. It was charged that unfair labor practices were carried on by both respondents at a

quarry owned by respondent Dayton Coal and Iron Corporation, hereinafter called "Dayton," and operated by respondent Lea under a lease executed February 1, 1950, by respondent Dayton. The production and maintenance employees of the quarry were eleven in number. On January 27, 1950, ten of them had joined a union. This was known to the superintendent of Dayton, who adversely commented upon that fact on February 1, 1950, to the employee newly elected to serve as steward of the union. On February 2, 1950, Lea, acting under the advice and with the cooperation of Dayton's general manager, discharged each of the eleven production and maintenance employees of the quarry and one watchman. The record also presents evidence of coercive anti-union statements and refusal to bargain.

■■ Dayton, which operates a small crushed stone business, under the contract of lease agreed to advance the payroll and all other operating expenses to Lea, who was to use Dayton's equipment to produce stated monthly quantities of crushed stone for Dayton. The lease empowered Dayton to terminate the agreement on ten days' notice and to suspend temporarily all quarry operations in case Dayton was unable to secure sufficient orders for sale of the stone. In view of Dayton's domination and control of the operation performed on its property with the use of its equipment and financed by its advances, we think the Board correctly concluded that Dayton was accountable for the unfair labor practices which were found to exist, evidence of which was substantial and supported by the record considered as a whole. Cf. N. L. R. B. v. Federal Engineering Co., 6 Cir., 153 F.2d 233.

■ Upon the jurisdictional question, a substantial amount of Dayton's product which for a representative year of the quarry operation totaled $110,243.71, was stipulated to have been used in the construction, maintenance, and repair of federal roads. Purchases totaling $17,-323.89 were used on "Tennessee State Highway No. 29, U. S. Highway No. 27," and additional purchases of over $32,000.00 were stipulated to have been used on "state and federal roads."

This court held in Koepfle v. Garavaglia, 6 Cir., 200 F.2d 191, that an original road construction upon land never before used as a highway is not within the definition of "commerce" or the "production of goods for commerce" within the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq., merely because eventually some interstate commerce will move upon it. This followed the rule of Pedersen v. Delaware, Lackawanna & Western Railroad Co., 229 U.S. 146, 151, 33 S.Ct. 648, 650, 57 L.Ed. 1125, that the repair of existing instrumentalities is so closely related to interstate commerce as to be in practice and in legal contemplation a part of it, but that the construction of tracks, bridges, etc. which "have not as yet become instrumentalities in such commerce," falls in a different category. Here the figures shown in the stipulation should have been broken down to show how much was expended upon federal roads and how much was new construction as distinguished from repair. We do not consider the amounts used in the construction and repair of state and rural roads as establishing jurisdiction. Whether such roads are an integral part of the channels of interstate commerce depends upon their connection with interstate highways. However, here it is clear, we think, that a substantial amount of appellant's product was used in the maintenance and repair of federal roads and this fact sustains the jurisdiction.

It is ordered that the order of the Board be enforced.