**ALASKA ROUGHNECKS AND DRILL-ERS ASSOCIATION, Petitioner,**

**v.**

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**MOBIL OIL CORPORATION, Petitioner,**

**v.**

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**Nos. 75–3049, 75–3328.**

United States Court of Appeals, Ninth Circuit.

June 14, 1977.

Suzanne C. Pestinger, Birch, Jermain, Horton & Bittner, Anchorage, Alaska, argued, for petitioner in No. 75–3049.

Allison Brown, Atty., Elliott Moore, Asst. Gen. Counsel, N. L. R. B., Washington, D. C., argued for respondent.

Risher Thornton, Holland & Thornton, Anchorage, Alaska, argued for petitioner in No. 75–3328.

Before LUMBARD,* WRIGHT and ANDERSON, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

This appeal tests the validity of an order of the National Labor Relations Board which held that Mobil Oil Company [Mobil] violated sections 8(a)(1) and (5) of the National Labor Relations Act [29 U.S.C. §§ 158(a)(1) and (5) (1970)]. It found that Mobil unlawfully refused to bargain with the union representing the employees of Santa Fe Drilling Company which had subcontracted with Mobil to perform drilling operations on an offshore oil drilling platform. The Board asks enforcement, Mobil asks reversal, and the union seeks to have the order modified.

## I.

### FACTS

**A. Before Union Involvement.**

The situs of this case is the Granite Point Platform, one of several offshore platforms in Cook Inlet, near Anchorage, Alaska. Mobil's financial interest in this platform is substantial, approximately $50,000,000. Although Union Oil Company has a one-quarter interest in the platform, Mobil alone operates it. Beginning in 1969, Mobil has awarded contracts for the drilling and other parts of the operation under a competitive bidding procedure. Throughout the operation Mobil has had some of its own employees on the platform for pollution control, safety measures, and other reasons.

By bidding competitively Santa Fe Drilling Company, a division of Santa Fe International Corporation, had been awarded the contract for drilling operations since 1969. This large company performs oil field services globally for many oil companies.

The contract in issue, executed in 1972, obligated Santa Fe *inter alia* to furnish employees "as required by Mobil" and to replace any whose qualifications or performance Mobil found unsatisfactory. In addition, Mobil was to fix employees' work schedules and to provide transportation by helicopter to and from the platform. Although employees' wages and fringe benefits were also specified in the contract (with a provision for adjustment to reflect changes in the industry), the employees were on Santa Fe's payroll and Santa Fe paid their insurance, taxes, and other deducted items.

In consideration for Santa Fe's services, Mobil agreed to compensate it on a cost-plus basis. In essence, Mobil made Santa Fe whole for its wage and fringe benefit outlay and other expenses and paid Santa Fe an additional fixed percentage of its costs as profit. The contract provided for termination by either party on 30 days' notice.

Although the record provides abundant data on the manner of performance, it is sufficient to note that Mobil appears to have exercised some supervision of Santa Fe's employees. Pursuant to the contract at least one Mobil employee, a production foreman, was always present on the platform. He actually directed the drilling operations.

Santa Fe's leadmen had at least nominal power to direct the work but in practice they served as conduits between Mobil's foremen and the employees, seldom giving other than routine directions without clearance from Mobil's foremen. As a check on costs, Mobil's foremen even approved the employees' timesheets on forms supplied by

---

* Senior Circuit Judge for the Second Circuit.

Santa Fe, although Santa Fe actually paid the employees' wages and fringe benefits.

## B. *After Union Involvement.*

During the fall of 1973 Alaska Roughnecks and Drillers Association (the "union") engaged in an organizing campaign aimed at all Santa Fe employees in Alaska. As a result the union filed two representation petitions with the Board. The one involved here named Santa Fe as the employer and Santa Fe was notified of, and participated in, the hearing conducted by the Board pursuant to the union's petitions.

At the hearing the union stipulated that Santa Fe was the employer and the Board's Regional Director so found. No claim was made that Mobil was either the employer or a joint employer with Santa Fe. Although the union proposed a single unit for both the Granite Point Platform and another one operated by Marathon Oil Company, the Regional Director established a separate unit for the Granite Point group.

As a result of the representation hearing the Board certified the union as the bargaining agent for the Granite Point unit in January, 1974. Anticipating that collective bargaining would result in higher wages for the unit employees, Santa Fe notified Mobil in February 1974 that it would ask Mobil for an increase in wages and fringe benefits specified in the contract should wages increase.

Within a month the union and Santa Fe commenced bargaining. Expecting that bargaining would result in higher wages and benefits, Mobil decided to seek new bids for the drilling operations. It invited five contractors, including Santa Fe, to submit bids. Only Santa Fe responded, but after bids were due V. E. Construction Company asked and was permitted to bid.

V. E.'s bid was lower than Santa Fe's (it provided for fewer fringe benefits) and Mobil staff recommended in late April or early May that it be accepted. Consequently, on June 14, 1974 Mobil gave Santa Fe its thirty-day notice of termination and then contracted with V. E. Construction Company.

Meanwhile, negotiations between Santa Fe and the union had been unsuccessful despite the use of a federal mediator. On May 29, 1974, the employees struck. When Santa Fe received Mobil's termination notice it notified the union on June 21, 1974 that it would bargain with the union about the contract termination. On June 26, 1974 the union for the first time asked Mobil to bargain as a "successor employer."[1]

Mobil refused to bargain and on July 5, 1974, the union filed charges of unfair labor practices with the Board, claiming that Mobil was a *successor employer.* After investigation, the Regional Director refused to issue a complaint and the union appealed. The Board's General Counsel sustained the appeal and issued a complaint charging Mobil, as a *joint employer* with Santa Fe, with violating sections 8(a)(1) and (5) of the Act.

The case was tried before an administrative law judge who found that Mobil, as a joint employer with Santa Fe, had violated the Act as charged. Reinstatement of all employees and of the Santa Fe contract, plus full back pay, were ordered. Mobil appealed. The Board modified only the remedy by denying reinstatement and granting back pay from the date the Santa Fe contract was terminated until Mobil agreed to bargain with the union.

Mobil has petitioned for review of the Board's decision, claiming *inter alia* that the union's June 26 request to bargain was untimely and that Mobil was not required to bargain as a joint employer. The union also petitioned for review, claiming that reinstatement should have been ordered. In response to both petitions, the Board cross-petitioned, seeking enforcement of its order. The two appeals have been consolidated. There is no contention, nor is there support in the record for any, that Mobil was guilty of anti-union bias.

1. For a recent examination of what constitutes a successor employer, *see Pacific Hide & Fur Depot, Inc. v. NLRB,* 553 F.2d 609 (9th Cir. 1977).

## II.

### DUE PROCESS—NOTICE AS A PREREQUISITE TO THE DUTY TO BARGAIN

The unfair labor practices involved are predicated on the Board's finding that Mobil, as a joint employer with Santa Fe, unlawfully refused to bargain. The Board found that Mobil was a joint employer primarily because of the control it exercised over Santa Fe's employees. But the extent of Mobil's control is not determinative of this appeal. The appeal presents the question whether Mobil could refuse to bargain with the union when it was neither afforded an opportunity to participate in the certification proceedings nor requested by the union to bargain until after Mobil terminated its contract with Santa Fe. As we shall see, our answer is that Mobil acted lawfully.

The conceptual basis for our decision is due process. Its application to NLRB proceedings, like other administrative proceedings, is not novel. See *NLRB v. Welcome-American Fertilizer Company*, 443 F.2d 19, 20 (9th Cir. 1971); *NLRB v. Jordan Bus Company*, 380 F.2d 219, 222–23 (10th Cir. 1967); *Russell-Newman Mfg. Co. v. NLRB*, 370 F.2d 980, 984 (5th Cir. 1966). Two closely related aspects of procedural due process are involved. One is the requirement of notice and an opportunity to be heard:

> "The fundamental requirement of due process of law is the opportunity to be heard." *Grannis v. Ordean*, 234 U.S. 385, 394, 34 S.Ct. 779, 58 L.Ed. 1363 (1914). The hearing must be "at a meaningful time and in a meaningful manner." *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965). In the present context these principles require that a recipient have timely and adequate notice detailing the reasons for a proposed termination, and an effective opportunity to defend by confronting any adverse witnesses and by presenting his own arguments and evidence orally.

*Goldberg v. Kelly*, 397 U.S. 254, 267–8, 90 S.Ct. 1011, 1020, 25 L.Ed.2d 287 (1970).

The other relevant aspect of due process relates to the Board's own regulations for certification proceedings, 29 C.F.R. §§ 102.-61 et seq. As we stated in *NLRB v. Welcome-American Fertilizer Company, supra* at 20:

> When administrative bodies promulgate rules or regulations to serve as guidelines, these guidelines should be followed. Failure to follow such guidelines tends to cause unjust discrimination and deny adequate notice contrary to fundamental concepts of fair play and due process.

These principles demonstrate that if we are to affirm the Board's finding of Mobil's joint employer status (and the resultant unfair labor practices), the record must reveal that Mobil was afforded notice and a timely opportunity to challenge that finding. There is no such evidence.

What the record does indicate is that the first notice Mobil received that anyone believed it to be an employer of Santa Fe's employees was when the union asked it to bargain. Even then it was not notified it was a joint employer. The union asked only that Mobil bargain as a *successor employer*. Not until the Board issued a complaint charging Mobil with unfair labor practices was Mobil notified of its duty to bargain as a *joint employer*. Because Mobil had already terminated its contract with Santa Fe, the notice was clearly untimely.

Perhaps the employer could have anticipated its duty to bargain, but the Act imposes no such duty. As the Supreme Court held in *NLRB v. Columbian Co.*, 306 U.S. 292, 297, 59 S.Ct. 501, 504, 83 L.Ed. 660 (1939):

> Since there must be at least two parties to a bargain and to any negotiations for a bargain, it follows that there can be no breach of the statutory duty by the employer—when he has not refused to receive communications from his employees—without some indication given to him by them or their representatives of their desire or willingness to bargain.

Therefore, because due process necessitates notice and a *meaningful* opportunity to be heard, we hold that the notice to Mobil and

opportunity to be heard were wholly inadequate.

Although Mobil may have been aware of the union's activities before the union requested bargaining, the record also indicates that Mobil knew that the Board conducted certification proceedings in which it was not asked to participate. The Board's regulations provide that the petition for certification *shall* contain the employer's name and that the employer *shall* be notified of the hearing. 29 C.F.R. §§ 102.61, 102.63. They also specify a procedure for amending the petition which *shall* contain the employer's name. 29 C.F.R. § 102.61(e). In this case the union named Santa Fe in the original petition and never attempted to file an amended petition to include Mobil as a joint employer.

Because Mobil was neither named as an employer nor given an opportunity to object as permitted by 29 C.F.R. § 102.63, it was entitled to rely on the certification result that Santa Fe was the employer, not Santa Fe *and* Mobil.

As we have noted, failure to follow promulgated rules tends to deny adequate notice. *NLRB v. Welcome-American Fertilizer, supra* at 20. Relying on regulations which do provide for adequate notice, Mobil terminated its Santa Fe contract before having either notice of its alleged status as employer, or any duty to bargain. Relying on those regulations, we hold that the notice received was inadequate.

*NLRB v. Jordan Bus Co., supra,* supports our holding that Mobil was entitled to notice and an opportunity to challenge its status as employer at the Board certification proceedings. In *Jordan,* Denco alleged that it was denied due process because the original representation petition of the union sought only to represent the Jordan drivers and thus only Jordan had notice of the evidentiary hearing. The union was also allowed to amend its petition to include Denco, however, alleging it to be a single employer with Jordan. The court stated:

> [A]lthough the Board's regulations make no provision for the minimum length of time required between notice and the

representation hearing, it is certain that notice on the day of the hearing is not reasonable notice. . . . The Board advances the somewhat incredible contention that since Jordan and Denco constituted a single employer, notice to Jordan was notice to Denco. But, this assumes the existence of a single employer status—the very issue to be resolved at the hearing—and Denco is certainly entitled to a reasonable opportunity to present evidence on this issue.

380 F.2d at 223.

Although the court ultimately concluded that Denco had been afforded ample opportunity to challenge its status as employer, this was only because Denco failed to indicate it could produce evidence that it was not the employer. The court did not reason, as the Board urges here, that the results of the representation proceeding should be ignored. On the contrary, as the quoted passage indicates, the representation proceeding, not the unfair labor practice proceeding, is where employer status should be litigated. Because Mobil had no opportunity to participate in the representation proceeding, it was not accorded due process. *See also Potter v. Castle Construction Co.,* 355 F.2d 212 (5th Cir. 1966).

■ The Board contends that because Mobil was a joint employer with Santa Fe and the latter was notified of the certification proceedings, Mobil received adequate notice. It relies principally on three cases to support its position: *Ace-Alkire Freight Lines, Inc. v. NLRB,* 431 F.2d 280, 282 (8th Cir. 1970); *NLRB v. Dayton Coal & Iron Corp.,* 208 F.2d 394 (6th Cir. 1953); *NLRB v. Long Lake Lumber Co.,* 138 F.2d 363 (9th Cir. 1943). We do not read them to support that position.

*Ace-Alkire* did involve a situation in which the Board's representation proceeding was not the method utilized to ascertain the proper parties for collective bargaining. But the method that was utilized, presentation of cards signed by the majority of employees, afforded notice to both employers claimed to be joint employers because

both were approached with cards by the union.

*Dayton Coal* might be relevant but the opinion does not indicate what method was utilized or whether Dayton received notice and an opportunity to challenge its status as employer. We cannot therefore view it as supporting the Board's position.

In *Long Lake Lumber,* as in *Ace-Alkire,* certification proceedings were not involved. Long Lake, the party contesting its joint employer status, actively intervened in the labor dispute between Robinson, its contractor and the union. Had Mobil either intervened in Santa Fe's labor dispute with the union, as in *Long Lake,* or been approached by the union earlier, as in *Ace-Alkire,* those cases might be relevant. Because neither event occurred, however, the Board's finding that Mobil was a joint employer cannot be sustained.

The petition to review the decision and order of the Board is granted, the Board's order is set aside, the Board's petition to enforce its order is denied, and the union's cross-petition is dismissed.