NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

PEPSI–COLA BOTTLING COMPANY OF TOPEKA, INC., Respondent.

No. 77–1716.

United States Court of Appeals, Tenth Circuit.

Argued March 12, 1979.

Decided Jan. 7, 1980.

269

Corinna Lothar Metcalf, Atty., N. L. R. B., Washington, D. C. (John S. Irving, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Carl L. Taylor, Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, Marion Griffin, Atty., N. L.

R. B., Washington, D. C., with her on brief), for petitioner.

William G. Haynes, of Eidson, Lewis, Porter & Haynes, Topeka, Kan. (K. Gary Sebelius, Norton, Kan., with him on brief), for respondent.

Before SETH, Chief Judge, and BREIT-ENSTEIN and LOGAN, Circuit Judges.

LOGAN, Circuit Judge.

The National Labor Relations Board has applied for enforcement of an order it issued against Pepsi-Cola Bottling Company of Topeka, Inc., requiring the Company to cease and desist from unfair labor practices, to bargain collectively with the union, to reinstate former strikers and compensate them for loss of earnings, and to post the usual notice. The administrative law judge found the Company had violated section 8(a)(1), (3) and (5) of the National Labor Relations Act (the Act), 29 U.S.C. § 158(a)(1), (3) and (5); the Board affirmed with slight modification.

All of the events involved in this case occurred in 1975. Local No. 142, Laborer's International Union, AFL–CIO, was certified as the bargaining representative of the Company's employees on April 7. When negotiations for a contract were unsuccessful, the Union employees struck from June 23 to July 15. The strike failed; it was later found to be an economic and not an unfair labor practice strike. On July 16 the strikers applied for reinstatement (apparently through the Union), but were told their jobs had all been filled. During this time the Company was owned entirely by Donald Bidwell and his wife, who sold all their shares to Donald Hogue, the sale to be effective August 4. Pursuant to an agreement made in connection with this sale, Bidwell terminated all of the employees on August 2, notifying them that they could reapply for jobs with the new owner. Hogue hired at least 80% of the people who had been working for the Company at the time of the transfer, most of them nonstrikers or persons hired to replace strikers. Hogue hired one of seven strikers who applied for work, and at least one other new em-

ployee. Hogue refused to negotiate with the Union after the sale, claiming that he had serious doubts it represented a majority of the Company's employees.

The Board found Bidwell had lawfully terminated the employees. This ruling is not challenged. Some of the unfair labor charges made by the Board were adjudicated in favor of the Company, and these also are not at issue in this proceeding. The controversy here concerns the Board's findings of the following violations:

(1) Section 8(a)(1) violations founded on Bidwell's interrogation of two employees concerning whether they "knew of" the letter sent by the Union during the pre-election period; Bidwell's threat to discharge two employees because of union activities; and the Company's requirement, during Bidwell's ownership, that the replaced strikers fill out new employment application forms;

(2) Hogue's refusal to bargain with the Union after he acquired the Company, in violation of sections 8(a)(1) and (5);

(3) Hogue's discrimination against strikers in his hiring process, in violation of sections 8(a)(1) and (3).

Section 10(e) of the Act, 29 U.S.C. § 160(e), provides that fact findings made by the Board are conclusive "if supported by substantial evidence on the record considered as a whole." It is not this Court's place to overturn the Board's decision because it might have decided the matter differently. This standard, however, does not remove from the courts of appeals their responsibility to assure that the Board acts within reasonable bounds and that the supporting evidence is indeed substantial. *See Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 490, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

I

The evidence supporting the unfair labor practice charges concerning Bidwell's interrogation about the letter sent by the Union and his threats of discharge consists primarily of the conflicting testimony

of Bidwell and the employee involved in each incident. The administrative law judge believed the employees' recitals of the events. The determination of credibility is particularly within the province of the hearing officer. *NLRB v. Dover Corp., Norris Div.*, 535 F.2d 1205, 1209 (10th Cir.), *cert. denied*, 429 U.S. 978, 97 S.Ct. 488, 50 L.Ed.2d 586 (1976). We see no circumstances in the record that would indicate these findings are unreasonable and therefore we accept the determination of credibility.

■ The opinion of the administrative law judge fairly sets out the testimony and his basis for finding that the interrogations were coercive. The evidence is not overwhelming, but is sufficient. Since the determination of whether particular interrogations are unlawful is the primary responsibility of the Board, we will not disturb its decision. *See NLRB v. Miller Trucking Serv. Inc.*, 445 F.2d 927, 930–31 (10th Cir. 1971).

■ Substantial evidence supports finding Bidwell unlawfully threatened two employees with discharge. Zane Brown testified that he was called to a meeting in Bidwell's office to discuss his continued employment and was told by Bidwell, "[W]hen you're in the Union, you're fighting the company. And when you fight the company, I have no further needs of your services." Janice Cote testified that when she was in Bidwell's office discussing her continuing employment, he stated this "was his business and no crazy sons of bitches [referring to the Union] was going to run it and he could get rid of us anytime he wanted to and no god damn union was going to save us." These statements, made to employees in the formal atmosphere of the president's office in the context of discussing their continued employment, constitute a violation of section 8(a)(1).

The Board also insists that Bidwell committed an unfair labor practice by requiring the economic strikers who had been replaced during the strike to file employment applications if they were interested in filling vacancies that might occur in the future. In support of this holding the administrative law judge stated,

To denigrate and deny the replaced strikers their rights by placing them on a par with someone who applies for a job off the street, as it were, necessarily results in a loss of these rights to the striker. In short, the requirement of making out new applications for employment addressed to replaced strikers wipes the slate clean with respect to any rights and ·priviliges [sic] they may have secured as employees. This deprivation constitutes, in my view, a retaliation or penalty for having engaged in protected, concerted activity, and is therefore violative of Section 8(a)(1) of the Act.

■ Economic strikers retain their status as employees as long as they have not obtained other regular and substantially equivalent employment. *See* Act § 2(3), 29 U.S.C. § 152(3); *NLRB v. Fleetwood Trailer Co.*, 389 U.S. 375, 378–81, 88 S.Ct. 543, 19 L.Ed.2d 614 (1967). Once rehired, economic strikers regain their seniority and other benefits, essentially the same as if they had been laid off in a force reduction and then recalled. *Id.*; *NLRB v. Great Dane Trailers, Inc.*, 388 U.S. 26, 87 S.Ct. 1792, 18 L.Ed.2d 1027 (1967). Therefore, treating economic strikers as new employees violates the Act.

■ The evidence on both sides shows the company attorney told the returning strikers there were no jobs available and they should "reapply" or "go make applications." Thus, it seems certain they were told that they must make some kind of formal application on an individual basis. But this is not necessarily evidence that the strikers were treated in significant respects the same as employees who had never worked for the Company.

In addition, there is evidence showing treatment consistent with continuing employee status. Bidwell's son testified that one striker was recalled between the end of the strike and the termination of all employees on August 2. The notice of termination in connection with the sale of the business was mailed to the strikers as well

as to those currently employed. Further, the administrative law judge's opinion states, "there is no evidence that during the period between July 15 and August 2, there were any jobs available for the returning strikers caused by the departure of permanent replacements, or otherwise."

It might be argued that the Board could adopt a *per se* rule, forbidding a requirement that employees file individual employment applications to come back to work on the theory that such a requirement always is an unfair labor practice, either because it is inconsistent with the recognition of the Union's status as the employees' bargaining representative or because, without a clear statement by the employer that the strikers retain their continuing-employee status, requiring a new employment application infers loss of seniority and other employee rights and hence is coercive. *Cf. NLRB v. Robinson*, 251 F.2d 639 (6th Cir. 1958) (circumstances inferred loss of employee status in requirement to file "new" application). We do not understand, however, that the Board is adopting a *per se* rule here. The determination, as quoted above, appears to be based upon a finding that this company denied the strikers their rights as continuing employees. That finding is not supported by substantial evidence. *See NLRB v. Fleetwood Trailer Co.*, 389 U.S. 375, 381, 88 S.Ct. 543, 547, 19 L.Ed.2d 614 (1967) ("The right to reinstatement does not depend upon technicalities relating to application.") Enforcement will be denied to this aspect of the Board order.

■ Hogue argues the Company should not have to remedy unfair labor practices committed by Bidwell. The Supreme Court, however, has made it clear that when there is a substantial continuity of enterprise, a purchaser who has knowledge of pending unfair labor practice litigation can be ordered to remedy any wrongs found. *Golden State Bottling Co. v. NLRB*, 414 U.S. 168, ·181–85, 94 S.Ct. 414, 38 L.Ed.2d 388 (1973). *See also NLRB v. Miller Trucking Serv., Inc.*, 445 F.2d 927 (10th Cir. 1971).

## II

After taking over the Company August 4, Hogue refused to bargain with the Union. The Board found this to be a violation of subsections 8(a)(1) and (5) because the Union had been certified for less than a year.

■ A certification must be honored for a reasonable period, usually one year, absent unusual circumstances. *See Brooks v. NLRB*, 348 U.S. 96, 75 S.Ct. 176, 99 L.Ed. 125 (1954). A change of ownership is not an "unusual circumstance" that will override the one-year period of certification, if a majority of the employees of the former employer are hired by the successor. *NLRB v. Burns Int'l Security Serv., Inc.*, 406 U.S. 272, 92 S.Ct. 1571, 32 L.Ed.2d 61 (1972).

■ The Company may have been correct in its belief that the Union no longer represented a majority of the employees, but that is irrelevant. The one-year rule is an "almost conclusive presumption of majority representation," *id.* at 279 n.3, 92 S.Ct. at 1578 n.3, apparently established in part to give a union the chance to show it can function after it has won the election. *See* Act § 9(c)(3), 29 U.S.C. § 159(c)(3). There is no evidence of any unusual circumstances here to overcome the "almost conclusive presumption." Hogue operated the business in substantially the same manner as had Bidwell, with the same products and the same customers. Hogue hired at least 80% of the former employees. Enforcement is granted on the bargaining requirement.

## III

Next we consider the finding that Hogue discriminated against the strikers in hiring. The Board acknowledges it was legal for Bidwell to terminate all employees pursuant to the sale and for Hogue to hire whomever he pleased, as long as Hogue was not motivated by a discriminatory intent.[1] The

---

1. We do not necessarily agree that the Board correctly decided this question, since the corporate entity here continued with only a change of ownership of the underlying stock. In

administrative law judge relied on two points of evidence to find there was discrimination. First, although Hogue said prior experience with the company was a significant consideration in his hiring, he employed only one striker out of the seven who applied to him. Second, Hogue admitted that participation in the strike "possibly" influenced him in his hiring decisions.

We would most likely uphold the Board's determination if we were convinced the discrimination in hiring issue was properly in the case. The Company contends, however, that the issue was not raised and litigated before the administrative law judge, and hence it was denied procedural due process of law. We agree.

The relevant part of the complaint, paragraph eight, only alleges that the Company, through Hogue, refused to reinstate unfair labor practice strikers after they had made an unconditional offer to return to work.[2] The administrative law judge subsequently held the strikers were economic rather than unfair labor practice strikers, and therefore the Company was relieved of any obligation to reinstate those it had permanently replaced. Thus, the charge in the complaint was resolved in favor of the Company.

▬ Failure to specifically plead a charge does not preclude finding a violation thereupon if the issue has been fairly tried by the parties. *NLRB v. MacKay Radio & Tel. Co.*, 304 U.S. 333, 349–50, 58 S.Ct. 904, 82 L.Ed. 1381 (1938); *J. C. Penney Co. v. NLRB*, 384 F.2d 479, 482–83 (10th Cir. 1967). This is not a case of a minor varia-

tion from the charge in the complaint. Failure to reinstate unfair labor practice strikers is quite a different offense from discrimination in hiring. To prove a charge of failure to reinstate unfair labor practice strikers requires only a showing that the strike was partially caused by the employer's unfair labor practices. Such strikers must be reinstated even if employees hired during the strike have to be discharged to provide the available positions. A charge of discrimination in hiring because of protected activity has different elements. The focus is on the employer's motivation in rejecting applicants for employment, and whether it was based at least partially upon the workers' union activities or sympathies.

We must examine the record, therefore, to determine whether the issue was fairly tried, and whether the Company was given an opportunity to fully contest the charge of discrimination in hiring. It is clear that the Company was confused about what theory the General Counsel was relying on to require Hogue to reinstate strikers. The Company tried to clear up the theories at the hearing. Near the end of a protracted discussion the following colloquy took place:

> Mr. Haynes [Counsel for the Company]: No. [General Counsel's] not alleging that Mr. Hogue, Pepsi-Cola Bottling Company of Topeka did anything after August 4, other than not to recognize the union. That's it.

> Judge Cohn: And also is it true, refusing to reinstate unfair labor practice strikers?

---

*NLRB v. Miller Trucking Serv., Inc.*, 445 F.2d 927, 930 (10th Cir. 1971), we said

> The employing entity at all times was Miller Trucking Service, Inc. The transfer of the corporate stock from Hilary Miller to Tulsa did not change the corporate entity. We agree with the Board that the corporate entity will sometimes be pierced when it is used to evade legal responsibility, but it will not be pierced to protect it against its own wrongdoing. Whatever unfair labor practices might have occurred they were not the result of the sale of the stock but of managerial actions. *See also Golden State Bottling Co. v. NLRB*, 414 U.S. 168, 182 n.5, 94 S.Ct. 414, 38 L.Ed.2d 388 (1973). Neither the Union nor any employee is a party to this appeal, however. The

Board petition for enforcement assumes its ruling is correct, and the Company does not complain since the finding is favorable to its position. Therefore, we consider ourselves bound to decide the hiring discrimination issue from the posture stated by the Board in its request for enforcement.

**2.** That paragraph provides as follows:

> (a) On or about August 2, 1975, and continuing to date, the Respondent, acting by and through the said Don Hogue, has failed and refused to reinstate the unfair labor practice strikers referred to above in paragraph 7 after they had made an unconditional offer to return to work.

Mr. Clark [Counsel for the NLRB]: Your Honor, the complaint in that case still alleges, I believe in paragraph eight.

Mr. Haynes: That's true, Your Honor
. . .

There was no mention made at that time of discrimination in hiring; and it seems apparent that the government was not espousing this theory. *Cf. NLRB v. United Nuclear Corp.,* 381 F.2d 972, 978 (10th Cir. 1967) (in response to questions at hearing, Board lawyer made clear the particular violation at issue, even though it was not charged in the complaint).

The only significant evidence on this issue, as discussed earlier, was Hogue's testimony in response to the NLRB counsel's direct examination.[3] On cross-examination the Company had an opportunity to defend Hogue's motivation in hiring.[4] We cannot say, however, that this shows the Company recognized discrimination in hiring because of union activity was an issue in the suit. The evidence was relevant to the Company's defense to the charge of failure to bargain, which included the argument that Hogue had caused the lack of majority by purposefully not hiring Union adherents. Surely more would have been submitted if the parties had thought they were trying a discrimination-in-hiring charge.

In reaching this conclusion, we are also influenced by the administrative law judge's apparent confusion concerning the test to be applied. He said, "Finally, it would appear, based upon the Court's opinion in *Fleetwood,* that Hogue's intent is essentially irrelevant where the rights of former strikers are involved . . . ." The Board rejected this by pointing out the difference it perceived between the successor's duty not to discriminate in hiring, and a continuing employer's duty to reinstate economic strikers when vacancies occur.[5]

■ Many labor dispute cases involve multiple charges based on a variety of occurrences. This case was complex and confusing—there were not only a number of charges but a change of ownership, with the responsibilities of the corporation after that change at issue. Simply because violations could have been alleged in addition to those in the complaint does not obligate the employer to defend against all possibilities. "Failure to clearly define the issues and advise an employer charged with a violation of the law of the specific complaint he must meet and provide a full hearing upon the issue presented is, of course, to deny proce-

3. Q. (by Board Counsel) Did the effects of the previous union problem have any roll [sic] in that consideration?
A. (by Hogue) Possibly.

4. Q. (by Mr. Haynes) During your direct testimony a question was put to you with regard to whether the labor problems that had existed prior to the sale or a question similar to that, had anything to do with your considerations of who to hire. I don't recall your answer to that question. Can you answer that, please?
A. My response was, it is possible.
Q. Could you explain that?
A. Psychologically, I think it would be difficult for anybody to not take that into consideration under the circumstances.
Q. What part did that play in your decision to hire those individuals who were hired?
A. Very little. If that had played a prominent part in my decision I probably would not have rehired Larry Couch, Joe Zetner or hired Chuck Jacobson.

5. The NLRB opinion, in note 2, states as follows:

Although we herein affirm the Administrative Law Judge's finding that the Respondent violated Sec. 8(a)(3) and (1) by discriminatorily refusing to rehire former economic strikers, we disagree with his statement that the Respondent's intent in this case is "essentially irrelevant" in view of the law as defined in *N. L. R. B. v. Fleetwood Trailer Co., Inc.,* 389 U.S. 375 [88 S.Ct. 543, 19 L.Ed.2d 614] (1967). Since there is no question that on August 2, 1975, the Respondent legally terminated all its employees, including former economic strikers, pursuant to the contract for sale of 100 percent of its stock, the Court's language in *Fleetwood* with respect to the reinstatement rights of economic strikers who have been permanently replaced is inapposite. It was therefore incumbent upon the General Counsel to prove that the Respondent was motivated by discriminatory intent in refusing, on August 4, 1975, and thereafter, to rehire former employees who had engaged in protected concerted strike activity. We agree with the Administrative Law Judge that the evidence of discriminatory motive is sufficient to support the violation found.

dural due process of law." *J. C. Penney Co. v. NLRB*, 384 F.2d 479, 483 (10th Cir. 1967).

 We find, on the record, that the notice to the Company with respect to the discrimination in hiring charge was insufficient to satisfy due process standards, and that this issue was not fairly and fully litigated.

The Board's order is enforced in part and denied in part, in accordance with the views expressed herein.