**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**QUALITY C.A.T.V., INC., Respondent.**

**Nos. 86–1811, 86–1988.**

United States Court of Appeals, Seventh Circuit.

Argued Feb. 10, 1987.

Decided June 29, 1987.

Judith Dowd, N.L.R.B., Elliott Moore, N.L.R.B., Washington, D.C., for petitioner.

Stephen C. Cline, Peterson, Haramy, Cline & Shoup, Indianapolis, Ind., for respondent.

Before WOOD and RIPPLE, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

ESCHBACH, Senior Circuit Judge.

The National Labor Relations Board ("Board") has filed a petition asking this court to enforce an order of the Board, which held that respondent, Quality C.A.

T.V., Inc. ("Quality"), had violated section 8(a)(1) of the National Labor Relations Act by discharging two employees for protesting an uncomfortable condition of employment. Quality has filed a cross-petition for review of the Board's order. Because the violation found by the Board was not alleged in the complaint or ever raised at the evidentiary hearing and Quality may have explored different facts or arguments had it known of the unalleged charge, the procedure here violated due process and we will vacate and remand for further proceedings consistent with this opinion.

## I

In its business of installing and operating cable television franchises, Quality contracts with various utilities to string its television cable on their utility poles. On July 22, 1982, Quality had a crew of employees engaged in stringing nonenergized television cable on utility poles that were already carrying telephone lines. The poles were carrying no other power lines. It began to rain early in the afternoon and Quality's crew supervisor, Jeffrey Fairfield, instructed the crew to stop their work. After suggesting that the remaining crew members follow, Fairfield and most of the crew members left the site in one of Quality's vehicles and went to a local coffee shop to wait out the rain. However, two of the crew members, Jerry L. Reners and Charles H. Boyle, Jr., chose to remain on the poles on which they had been working when it started to rain. Because they required the assistance of a groundman to continue to work, one groundman stayed with them. Boyle and Reners remained on the poles for some little time but eventually got down and with the groundman climbed into the remaining company truck with the intention of joining the others at the coffee shop. They were, however, unable to start the truck, and they waited for a time, thinking that the others might come back to get

them. The ALJ found that during this period Boyle and Reners decided they would no longer work that day, because they felt they were mistreated by the failure of the crew to come back to check on them. They eventually decided to walk through the rain to the coffeeshop. Some time later the weather cleared and Fairfield took the crew back to the poles to work. When they got back to the job site, however, Boyle and Reners refused to work, pointing out that they were still wet. Believing a full crew was required in order to work effectively, Fairfield dismissed the entire crew for the day. Fairfield reported this situation to Quality's president, Fred Martin, who told him that Boyle and Reners had by their actions voluntarily quit and that if they attempted to return to work they should be so informed. Boyle and Reners did attempt to return to work the next morning and Fairfield explained Martin's position and gave the two men their paychecks along with instructions for collecting additional monies they were owed.

Boyle then filed an unfair labor practice charge alleging that the discharge of Boyle and Reners violated section 8(a)(1) of the National Labor Relations Act. 29 U.S.C. § 158(a)(1). Several days later Reners also filed an unfair labor practice charge alleging that Quality had violated section 8(a)(1).[1] The Board through its Acting Regional Director consolidated the charges and issued a complaint alleging *inter alia* that Quality had violated section 8(a)(1) by discharging Boyle and Reners because they had "ceased work concertedly and engaged in a strike by refusing to perform physically dangerous work." After a hearing on the charges an Administrative Law Judge ("ALJ") concluded there had been no violation and dismissed the complaint. The ALJ determined that the only issue litigated under section 8(a)(1) was the claim that Boyle and Reners had engaged in a concerted effort to protest unsafe working conditions

---

**1.** Reners' complaint also alleged a violation of section 8(a)(4), 29 U.S.C. § 158(a)(4), based on another event that is part of the background to this dispute. The ALJ found that there was no violation of section 8(a)(4), and the Board upheld this portion of the ALJ's opinion. The section 8(a)(4) claim has no bearing on the issue we decide today, and we thus do not discuss it further.

by means of a work stoppage. The ALJ then determined that the conditions were in fact safe, that Boyle and Reners had known this, and that they had not refused to work because of unsafe conditions.

The General Counsel of the NLRB filed exceptions to the ALJ's decision with the Board and in the brief accompanying those exceptions for the first time claimed that Boyle and Reners refusal to work was protected activity because it involved a protest over *uncomfortable* working conditions (being required to climb the telephone poles while wet).[2] Quality's counsel responded that this variance from the complaint amounted to an amendment of it and a change in strategy foreign to the issues heard at the hearing and argued in the briefs to the ALJ. Respondent's Answering Brief to Counsel for the General Counsel's Exceptions to the ALJ's Decision at 1–2.[3] A divided panel of the Board concluded in a summary footnote, with no discussion of the events at the hearing, that the parties had fully litigated the question of whether Boyle and Reners were discharged for a work stoppage to complain of discomfort. The Board held that Quality had violated section 8(a)(1) under this unalleged claim, even though the Board had explicitly adopted the ALJ's credibility findings and the ALJ had credited testimony suggesting that the employees were refusing to work for concerns other than their wet condition.[4] The Board majority

2. Most of the briefs filed with the ALJ and the Board were not made a part of the administrative record. Two of the briefs filed with the Board on review of the ALJ's opinion do address the discomfort allegation and suggest that this is when it first appeared. It is certain that the discomfort charge was not raised at the administrative hearing as this court has reviewed the hearing transcript and the General Counsel did not at any point raise the issue. Nor has the General Counsel objected to Quality's assertion that the issue was not even raised in the posthearing briefs filed with the ALJ. Even if the discomfort issue were raised in those briefs it would make no difference to our decision today. *See Stokely-Van Camp, Inc., v. NLRB,* 722 F.2d 1324, 1331 (7th Cir.1983) (clear violation of due process occurred when notice was first given in the General Counsel's posthearing brief filed with the ALJ prior to the ALJ's decision).

3. Quality's counsel thus objected to the presentation of the unalleged issue of discomfort at the first opportunity, his brief in response to the one that raised the claim. While he did not formally invoke the phrase "due process," he did open the responsive brief by noting that the issues were established at the hearing and argued that the General Counsel's brief represented an "effort to introduce new issues" that "misunderstood" the purposes of the appeal process. Respondent's Answering Brief to Counsel for the General Counsel's Exceptions to the ALJ's Decision at 1–2. He then argued the lack of relevant evidence on the newly presented issue, *id.* at 2–3, and indicated that had he known of the new issue prior to the evidentiary hearing he "might well have introduced" differing evidence, *id.* at 4. While Quality's presentation of the variance claim is not the most articulate we have seen, it was effective to raise the issue and it was repeatedly made. We also note that, having raised the issue before the Board, Quality proceeded to preserve it before this court,

raising it in his opening brief (to which the General Counsel responded by citing and arguing due process variance cases).

4. The ALJ found that that Boyle, Reners, and Holt (the groundman) were to be believed in their testimony that while sitting in the bucket truck they decided not to work because they believed the "most troubling aspect of the incident to be what they saw as their supervisors' lack of concern about their comfort." *Id.* at 5. This statement by the ALJ clearly referred back to his earlier explanation of the testimony at the hearing regarding Boyle, Reners, and Holts' actions when the others left the work site as it started to rain. When the three employees couldn't start the bucket truck to follow the others to the restaurant and no one returned to help them out "the three employees got upset at the apparent lack of concern on the part of their supervisors. Still sitting in the cab of the bucket truck, the three agreed that they were going to refuse to do any further work that afternoon." ALJ Opinion at 3. Thus the ALJ found credible the testimony of Boyle, Reners, and Holt that the three decided not to work because of their dissatisfaction with the rest of the crew's failure to return to help them out—this was the "lack of concern for their comfort" to which the ALJ referred.

The Board majority in its opinion, despite its explicit acceptance of the ALJ's credibility resolutions, failed to follow them. It rested its decision on a differing and contradictory factual conclusion, that Boyle and Reners had refused to work "to protest the requirement that they climb poles when wet, an employment condition." Board Opinion at 3. This was apparently due (as the dissenting member of the Board pointed out, see Board Opinion at 8 n. 2 (Dotson, Chairman, dissenting)) to the Board majority's failure to understand that the ALJ's reference to the employee's dissatisfaction with the

also found the violation on the unalleged claim notwithstanding the ALJ's specific indication that he believed no section 8(a)(1) claim other than hazardous working conditions was litigated.

The dissenting member of the Board agreed that the ALJ was correct in holding that no section 8(a)(1) violation had been shown for hazardous conditions but also believed that the hazardous conditions claim was the only claim litigated. The dissenter further believed that no other charge had been established in the record even if it was necessary to reach that question.

The Board has now petitioned this court to enforce its order finding an 8(a)(1) violation and ordering reinstatement and backpay for Boyle and Reners. Quality has filed a cross-petition asking us to review the Board's order.

## II

■ We must decide if the procedure utilized by the Board in the circumstances presented by this case comported with Quality's due process rights where the complaint did not allege such a violation, the complaint was never amended to reflect such a charge, the General Counsel never raised such a charge at the evidentiary hearing, and the first notice Quality ever received of a section 8(a)(1) discomfort allegation was apparently in the brief filed by the General Counsel with the Board excepting to the ALJ's decision.

The complaint in this case alleged in relevant part only that "On or about July 23, 1982, at a New Market, Indiana, jobsite, certain employees of the Respondent ceased work concertedly and engaged in a strike by refusing to perform physically dangerous work." NLRB Complaint ¶ 4(a). Thus the complaint, as it should, gave exact notice of the allegations raised in order to enable Quality to prepare for and present its defense. *See* 29 C.F.R. § 102.- 15; *NLRB v. Complas Industries,* 714 F.2d 729, 733–34 (7th Cir.1983); *Douds v.*

*International Longshoremen's Association,* 241 F.2d 278, 283 (2d Cir.1957). Of course the nature of the allegations in a complaint is also important as a standard of relevance at any hearing. *E.g., Complas Industries,* 714 F.2d at 733–34; *Douds,* 241 F.2d at 283. There is nothing in the complaint regarding any allegation of a section 8(a)(1) violation concerning discharges due to a concerted work stoppage to protest uncomfortable conditions of employment. Nor is there any general language that could be reasonably construed to present such an allegation. The complaint was never amended. Thus we are not presented with the question whether Quality received effective notice by way of the pleadings because Quality *never* received notice through the pleadings.

■ Therefore, we must consider only whether the course of the proceeding provided Quality with fair notice of the discomfort claim so that the Board could decide the question based on its full litigation. *Complas Industries,* 714 F.2d at 734. If a party in fact receives actual notice prior to or at the hearing and has a meaningful opportunity to prepare his defense the full and fair litigation of the claim will allow the Board to decide it even though the complaint was never formally amended to include that claim. *Id.; Stokely-Van Camp, Inc. v. NLRB,* 722 F.2d 1324 (7th Cir.1983); *George Banta Co., Inc. v. NLRB,* 686 F.2d 10, 22–24 (D.C.Cir.1982); *Soule Glass and Glazing Co. v. NLRB,* 652 F.2d 1055, 1074 (1st Cir.1981). In such a case the defending party has lost nothing by the failure to assert the claim in the formally prescribed manner because the party has received sufficient, actual notice and all of the evidence and argument has been presented that would have been presented had the allegation been raised in the complaint. The situation is different, however, where the party never receives notice that such a violation is contemplated for prosecution. In such a case, other evidence may exist or other arguments might

---

others' "lack of concern over their comfort" related to the failure of the crew to come and take them to the restaurant and not to their

supervisor's later request that they climb the poles when wet.

be made that the party reasonably chose not to pursue or emphasize in the defense of the only claim of which it had been informed. In such a case the unalleged claim has not been fully and fairly litigated and the defending party must be given a meaningful opportunity to prepare and present his defense. The test of due process in this setting is a determination of fair notice and "[w]hether fair notice is given by way of pleading, or by way of the course of proceeding of a full litigation, the crucial focus is at all times on whether notice was given which provided the party with an adequate opportunity to prepare and present its evidence." *Complas Industries*, 714 F.2d at 734.[5]

The record before us reveals that Quality's counsel read the complaint to mean what it said—the Board would attempt to prove that Boyle and Reners had been discharged because of their belief that they were being required to work in physically hazardous conditions. He thus prepared and presented evidence regarding what constituted a physical hazard and what Boyle and Reners believed to be a physical hazard. There is no evidence at all in the record that either of the parties or the ALJ suggested any theory of violation except

that of physically hazardous conditions. In fact, Quality's counsel paid careful attention to even the scope of that issue; in order to avoid presenting irrelevant expert evidence he made sure that there was no contention that Quality's general safety practices were wanting. Throughout the hearing the ALJ kept careful track of the evidence to avoid the introduction of irrelevant material and thus quite properly discouraged the parties from venturing into areas beyond the bounds of the complaint.

The ALJ made it abundantly clear at the hearing that the unsafe conditions claim was the only issue in the hearing and he even noted the narrow scope of that issue by commenting that the company's general safety practices were irrelevant; the only question that mattered was Boyle and Reners' reasonable belief of a physical hazard on that day at New Market. Admin. Hearing Transcript at 186. Neither party disagreed with this statement of the issue. The General Counsel, for example, was asked if he were alleging deficiencies in Quality's general safety practices. The General Counsel answered that "we're not saying that" and then went on to state that "[w]e're just saying that there was—it was

---

**5.** We recognize that in some cases courts have considered substantial factual overlap in their determinations of whether claims have been fully and fairly litigated. *See, e.g., NLRB v. Western Temporary Services, Inc.*, 821 F.2d 1258 at 1265 (7th Cir.1987) (dicta); *Alexander Dawson, Inc. v. NLRB*, 586 F.2d 1300, 1304 (9th Cir.1978); *Free-Flow Packaging Corp. v. NLRB*, 566 F.2d 1124, 1131 (9th Cir.1978); *cf. Soule Glass and Glazing Co. v. NLRB*, 652 F.2d 1055, 1074 (1st Cir.1981). We are also aware of the comment that the Board "has an obligation to decide material issues" that were fully litigated but not specifically pleaded. *See American Boiler Manufacturers' Association v. NLRB*, 404 F.2d 547, 556 (8th Cir.1968), *cert. denied*, 398 U.S. 960, 90 S.Ct. 2162, 26 L.Ed.2d 546 (1970); *NLRB v. Puerto Rico Rayon Mills, Inc.*, 293 F.2d 941, 947 (1st Cir.1961). Contrary to the implication of the Board's arguments in this case, these cases do not change the fact that the fundamental consideration is whether the defending party "understood the issue and was afforded full opportunity to justify [its actions]." *NLRB v. McKay Radio & Telegraph Co.*, 304 U.S. 333, 350, 58 S.Ct. 904, 913, 82 L.Ed. 1381 (1938); *see also NLRB v. Complas Industries*, 714 F.2d 729, 733–34 (7th Cir.1983); *Stokely-Van Camp, Inc.,*

*v. NLRB*, 722 F.2d 1324, 1331 (7th Cir.1983); *NLRB v. Illinois Bell Tel. Co.*, 674 F.2d 618, 621 (7th Cir.1982); *Soule Glass and Glazing Co.*, 652 F.2d at 1074; *REA Trucking Co. v. NLRB*, 439 F.2d 1065, 1066 (9th Cir.1971). The test of due process in these circumstances remains "one of fairness under the circumstances of each case— whether the employer knew what conduct was in issue and had a fair opportunity to present his defense." *Soule Glass and Glazing Co.*, 652 F.2d at 1074. For example, we concluded in the case of *Western Temporary Services* that one of the respondents there, The Classic Company, Inc., had received a meaningful opportunity to prepare and present its case. In that case, unlike this one, Classic was afforded actual notice in time to present evidence on the new issue at the evidentiary hearing. *Western Temporary Services*, at 1265. Because actual notice had been presented to Classic prior to the close of the evidentiary hearing, we proceeded to determine whether the evidentiary record was complete with regard to the new issue and whether any prejudice to the respondent resulted. *Id.* In the case at bar, however, the respondent Quality never had any chance to present evidence because it never received notice of the unalleged claim until after the close of the evidentiary hearing.

raining very hard, they were afraid to climb this pole—and, by the way, the company doesn't provide proper safety equipment...." *Id.* The General Counsel's attorney did not at this point or at any other point in the hearing claim that discomfort, rather than (or in addition to) fear of a physical hazard, prompted Boyle and Reners' refusal to work. Quality thus received no notice of any discomfort or other claim unalleged in the complaint even during the course of the evidentiary proceedings themselves.

The ALJ's opinion reflects the absence of any mention of a discomfort claim during the hearing. The ALJ framed the issue of the case in his opinion as "whether the reason that Boyle and Reners refused to work was their concern that, because they were wet, the work they were asked to perform was 'physically dangerous' (Complaint paragraph 4(a))." ALJ's Opinion at 4. The ALJ concluded that this was not the reason for their refusal to work and closes the section 8(a)(1) portion of his opinion by stating that "[t]he only issue litigated in respect to Boyle's and Reners' discharge was whether they were fired as a result of their refusing to work because of their concern about safety conditions." *Id.* at 5. In an accompanying footnote the ALJ explicitly noted that "I accordingly need not consider whether Boyle's and Reners' refusal to work might, under other theories, be protected activity." *Id.* at 5 n. 5. Thus the ALJ himself found that no other claims of protected activity were litigated (and the dissenting member of the panel of the Board agreed). While such a decision by an ALJ is not conclusive on either the Board or this court on an issue of due process, it certainly lends weighty additional support to the conclusion that discomfort was never asserted or argued at the hearing.

It should thus come as no surprise that no issue other than unsafe conditions was fully and fairly litigated. This is not to say that the evidence presented at the hearing on the hazardous working conditions claim would be irrelevant to a discomfort claim. It is unquestionable that the evidence regarding the motivation for Boyle and Reners' work stoppage would be relevant to both claims. But the simple presentation of evidence important to an alternative claim does not satisfy the requirement that any claim at variance from the complaint be "fully and fairly litigated" in order for the Board to decide the issue without trangressing Quality's due process rights. *NLRB v. Pepsi-Cola Bottling Co. of Topeka*, 613 F.2d 267, 274 (10th Cir. 1980). Because of the total absence of notice Quality's counsel did not, and could not be expected to, focus at the hearing on the evidence regarding a nonexistent discomfort allegation.

Had Quality's counsel known of the discomfort charge he would have been much more concerned about a myriad of factual and legal issues: why (and exactly when and to what extent) Boyle and Reners were wet; who they thought had showed a lack of concern for them; whether there was evidence of insubordination or disloyalty at the time of the incident or in the past; and whether the refusal to work caused acute harm to Quality, to list a few examples. These concerns would have undoubtedly caused Quality's counsel to take a different tack in his presentation of evidence and in his cross-examination of the General Counsel's witnesses.[6]

The fact some of these issues might also support defenses to the unsafe conditions claim makes no difference; Quality's counsel may have thought he could prove that the Boyle and Reners weren't concerned about safety without resorting to any general defenses to section 8(a)(1) liability. (If

**6.** To take just one specific example for the sake of clarity, Quality's counsel introduced some evidence into the record during the hearing that working conditions in July in Indiana are such that linemen often perspire. If Quality's counsel had known of the discomfort charge he would almost certainly have expanded on this inquiry to attempt to establish that linemen were often wet with perspiration in the summer, and that such unavoidable discomfort was indistinguishable from the condition of Boyle and Reners, who had been drenched earlier but had been sitting for some time in a coffeeshop.

this was the judgment of Quality's counsel it was eminently reasonable, for the ALJ accepted his argument and the Board also seems to have done so, though its opinion is somewhat garbled on this point.) They would have also required differing legal research and argument, which itself might have necessitated the exploration of different factual issues or a different approach to the factual issues already presented on the original claim. Speculation by reviewing courts regarding whether additional evidence might exist is a chancy endeavor at best, and it is one we refuse to undertake where the complete lack of notice entirely disabled Quality's counsel from taking any steps at the evidentiary hearing to defend against the unannounced claim.

The discomfort issue apparently first appeared in the arguments of the General Counsel in his brief to the Board in support of the exceptions the General Counsel took to the ALJ's opinion. In other words, the General Counsel, having failed to prove his case to the ALJ on the issue alleged in the complaint (discharge due to protest against working in physically hazardous conditions), chose to shift ground to the new claim of discomfort on appeal to the Board (rather than appealing the ALJ's decision on the ground alleged in the complaint and litigated at the hearing).

Courts have held that the Board has failed to provide meaningful opportunities to litigate issues in settings where notice was provided shortly before or during the administrative hearing. The Sixth Circuit in *NLRB v. Homemaker Shops*, 724 F.2d 535 (6th Cir.1984), found a variance that violated due process where company counsel had received notice of the new claim only "some three to four days" *before* the hearing. *Id.* at 548. The Sixth Circuit noted that Homemaker Shop's counsel had only a few days to prepare its defense (while the General Counsel had "months")

and that additional exculpatory evidence might have been introduced had Homemaker Shop's counsel received notice earlier or had a continuance been granted. *Id.* In the case before us Quality had no notice and thus never had a chance to prepare its defense to the discomfort claim, much less to present it.

In *Stokely-Van Camp, Inc., v. NLRB*, 722 F.2d 1324 (7th Cir.1983), this court held that a due process violation occurred when the respondent company was first informed of the differing charge in the General Counsel's posthearing brief filed with the ALJ prior to the ALJ's decision; in that case we concluded "that there was a clear violation of Stokely's due process rights." *Stokely Van-Camp, Inc.*, 722 F.2d at 1331. Notice in this case appears to have first been provided to Quality at an even later point—*after* the ALJ's opinion in the General Counsel's brief to the Board excepting to the decision.

We have also held that a complaint amended during the administrative hearing to present a new claim failed to afford the respondent company a meaningful opportunity to prepare and present its case where the new claim was not a "minor" variation from the claim in the original complaint. *Complas Industries*, 714 F.2d at 734.[7] We based our analysis in *Complas Industries* on the concern that "[i]t is the *opportunity* to present argument under the new theory of violation, which must be supplied." *Id.* (quoting *Rodale Press, Inc. v. FTC*, 407 F.2d 1252, 1257 (D.C.Cir.1968)) (emphasis in *Rodale Press*). As the *Rodale Press* court had noted and as we reiterated, "[t]he evil ... is not remedied by observing that the outcome would perhaps or even likely have been the same." *Id.*

We recognize that remanding this case will appear inefficient if the end result is similar to that reached by the Board in the

---

**7.** The reason that a new claim that is only a "minor" variation on the alleged claim might not violate due process if brought up at the hearing is that the nature of the new claim may be so close to the one already alleged that the party can still effectively and fully litigate the

new claim without having to perform further preparatory work. Where, however, the party is never notified during the hearing of the new claim, the party has no chance at all to restructure his approach to the litigation to meet the concerns raised by the new claim.

order now on review.[8] But any inefficiency in this case is entirely due to the failure of the General Counsel to notify Quality of the legally related, but factually different, charge of discomfort. If the General Counsel had included a discomfort claim in the complaint Quality would have been on notice of the issue and it would have been fully litigated at the hearing. Indeed, if the complaint were amended prior to or at the hearing itself the proceedings could have been adjusted to enable Quality's counsel sufficient time to prepare and present his defense to the discomfort charge. *E.g., Clear Pine Mouldings, Inc. v. NLRB*, 632 F.2d 721, 728 (9th Cir.1980) (six week adjournment to allow preparation of defense to new charge allowed a meaningful opportunity to defend and full and fair litigation of the new claim), *cert. denied*, 451 U.S. 984, 101 S.Ct. 2317, 68 L.Ed.2d 841 (1981). It is even possible that had the complaint been so amended during the hearing that no postponement would have been necessary; the issue might have been such a minor variation from the original claim (in the sense in which we discussed minor variations in *Complas Industries*, 714 F.2d at 734; *see supra* note 6) that Quality's counsel would have needed no postponement in order to have a meaningful opportunity to present a defense to the new claim. *See, e.g., NLRB v. Western Temporary Services, Inc.*, 821 F.2d 1258, at 1265 (7th Cir.1987) (respondent held to have been afforded due process where party notified of charge at hearing). We simply cannot reach that question on the insufficient record now before us.

In the circumstances of this case, however, the General Counsel availed himself of none of the above alternatives and we are thus not called upon to decide what would have been sufficient. The point of explaining the alternatives is simply to show that any inefficiency in this case was not due to some restrictive reading of the broad ability of the General Counsel (or the Board) to amend the complaint but rather to the complete failure of the General Counsel to notify Quality of the new charge against it. Thus our decision today in no way hampers the ability of the General Counsel to prosecute its cases efficiently and effectively; to make full use of the procedural flexibility allowed him the General Counsel need only observe the hardly onerous (but nevertheless crucial) requirements of due process.

### III

In accordance with the foregoing opinion, the Board's petition for enforcement is DENIED and Quality's petition for review is GRANTED. The Board's order is VACATED and REMANDED for further proceedings consistent with this opinion.

---

8. We of course express no opinion on or in any way predict the results the Board will reach on

remand.