**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**JASPER SEATING CO., INC., Respondent.**

**No. 87–2597.**

United States Court of Appeals, Seventh Circuit.

Argued April 11, 1988.

Decided Sept. 16, 1988.

**420**

Karen Arhdt, N.L.R.B., Washington, D.C., for petitioner.

Thomas O. Magan, Kahm, Dees, Donovan & Kahn, Evansville, Ind., for respondent.

Before BAUER, Chief Judge, and CUMMINGS and KANNE, Circuit Judges.

BAUER, Chief Judge.

This is an open and shut case—literally. Patricia Thompson and Kenneth Goodpasture walked off their jobs at Jasper Seating Company in protest over the opening of a large, overhead door at the facility in which they worked. Despite an indoor temperature of seventy-two degrees, both Goodpasture, clad in no more than a sleeveless shirt and shorts, and Thompson, donning blue jeans, a short-sleeved shirt, a flannel shirt, and a heavy sweater, agreed that the open door created cold and drafty conditions unsuitable for work. Both employees left work in protest over their working conditions and subsequently were terminated. The National Labor Relations Board (the Board) adopted the recommended order of the Administrative Law Judge, finding that Jasper violated Section 8(a)(1) of the National Labor Relations Act (the Act), 29 U.S.C. § 158(a)(1), by interfering with the employees' concerted, protected activity. We enforce the order of the Board.

I.

Jasper is a small furniture manufacturer whose employees are not represented by a union. Both Goodpasture and Thompson worked in the Company's machine building as bandsaw operators. Because the bandsaws were located near the shop's large, overhead door, the operators were subject to lower temperatures and drafts while other employees further from the door often felt too warm.

In an effort to resolve this continuing dilemma, Jasper's Production Manager, Allen Whitte, established a shop rule providing that the overhead door be opened when temperatures in the shop exceeded 68 degrees and left shut when the temperature fell below 68 degrees. Obviously, neither Thompson nor Goodpasture was satisfied with Whitte's solution. On the morning in question, both left work after their request to have the door closed was refused because a majority of the shop employees wanted it left open. Jasper's President Mutchman ultimately fired Thompson and Goodpasture, explaining that he wanted "to set an example," and "[wasn't] going to have people walking out like that."

Jasper contends that it did not violate section 8(a)(1) of the Act by discharging Thompson and Goodpasture because their walkout did not constitute protected, concerted activity as contemplated by section 7

of the Act.[1] Jasper argues that the temporary work stoppage was not protected because the employees' request was unreasonable, and did not constitute concerted activity for their "mutual aid or protection" because a majority of the shop employees opposed Thompson's and Goodpasture's cause.

## II.

■ We can dispose of Jasper's contentions quickly. It is well-settled that the "reasonableness of workers' decisions to engage in concerted activity is irrelevant to the determination of whether a labor dispute exists or not." *NLRB v. Washington Aluminum Co.*, 370 U.S. 9, 16, 82 S.Ct. 1099, 1103, 8 L.Ed.2d 298 (1962); *see also NLRB v. Mackay Radio & Telegraph Co.*, 304 U.S. 333, 344, 58 S.Ct. 904, 910, 82 L.Ed. 1381 (1938); *NLRB v. Parr Lance Ambulance Service*, 723 F.2d 575, 577–79 (7th Cir.1983). And once a labor dispute arises, section 7 of the Act authorizes a variety of concerted employee activity for their mutual aid and protection unsullied by employer interference. In *Washington Aluminum*, for example, the Court upheld the employees' right to engage in a work stoppage to protest cold working conditions, even though their conduct might have been "unnecessary and unwise" because the "company was already making every reasonable effort to repair the furnace and bring heat into the shop." 370 U.S. at 16, 82 S.Ct. at 1103.[2]

As in *Washington Aluminum*, Thompson and Goodpasture were involved in a continuing labor dispute with Jasper over the conditions of their employment, which culminated in the employees' concerted use of a legitimate means to bring about a change in those conditions. Regardless of whether it was wise or reasonable for Thompson and Goodpasture to engage in a short, one-day work stoppage, Jasper nevertheless was prohibited from terminating their employment.[3] *See Hugh H. Wilson Corp. v. NLRB*, 414 F.2d 1345, 1351 n. 12 (3d Cir.1969), *cert. denied*, 397 U.S. 935, 90 S.Ct. 943, 25 L.Ed.2d 115 (1970) (quoting *NLRB v. Halsey W. Taylor Co.*, 342 F.2d 406, 408 (6th Cir.1965)) (Regardless of the merits of an employee's complaint, "it is clear that sec. 7 protects his right to utter it as a matter of concerted activity with other employees for mutual aid.").

■ Finally, Jasper maintains that the majority rule recognized in *Emporium Capwell Co. v. Western Addition Community Organization*, 420 U.S. 50, 95 S.Ct. 977, 43 L.Ed.2d 12 (1975), and other collective bargaining cases, applies to limit the right of a minority of nonunion employees to engage in concerted activity for their mutual aid or protection without the support of the majority. This is nonsense. The majority rule of *Emporium Capwell* derives from the concept of exclusive collective-bargaining representation under section 9(a) of the Act, which embodies the notion that, once a majority of employees selects a bargaining agent, that agent

---

**1.** Section 7 of the National Labor Relations Act provides that "Employees shall have the right to self-organization ... and to engage in other concerted activity for the purpose of collective bargaining or other mutual aid or protection." 29 U.S.C. § 157. Section 8(a)(1) makes it an unfair labor practice for an employer "to interfere with, restrain, or coerce employees in the exercise of their rights guaranteed by Section 7...." 29 U.S.C. § 158(a)(1).

**2.** Although the Court stated that "concerted activities by employees for the purpose of trying to protect themselves from working conditions as uncomfortable as the testimony and Board findings showed them to be in this case are unquestionably activities to correct conditions which modern labor-management legislation treats as too bad to have to be tolerated in a

humane and civilized society like ours," it hardly announced new rule of law requiring employees to justify the reasons for their concerted activity, as argued by Jasper. *See Morrison-Knudsen Co., Inc. v. NLRB*, 358 F.2d 411, 414 n. 4 (7th Cir.1966).

**3.** As noted by the Board, Jasper "could have exercised its lawful option to replace [Thompson and Goodpasture] without significant delay or disruption to business operations." Moreover, "[h]ad Thompson or Goodpasture engaged in partial or repeated intermittent work stoppages or created a safety hazard by their precipitate walkout, which would have removed their protest from the Act's protection, the Respondent could then have lawfully discharged or disciplined them."

alone is entitled to represent the employees. Nothing in the Act, however, limits the rights of nonunionized employees to engage in concerted conduct for their mutual aid regardless of whether or not their goal is supported by a majority of employees.

The order of the National Labor Relations Board is

ENFORCED.