**QUALITY C.A.T.V., INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 91–2004.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 26, 1992.

Decided Aug. 4, 1992.

Stephen C. Cline (argued), Jan J. Kinzie, Cline, Owen & Kinzie, Indianapolis, Ind., for petitioner.

Eric G. Moskowitz, Howard D. Deiner, Abby Propis Simms (argued), N.L.R.B., Contempt Litigation Branch, Aileen A. Armstrong, N.L.R.B., Appellate Court, Enforcement Litigation, Washington, D.C., Steve J. Robles, N.L.R.B., Indianapolis, Ind., for respondent.

Before FLAUM and KANNE, Circuit Judges, and SHABAZ, District Judge.*

FLAUM, Circuit Judge.

Quality C.A.T.V., Inc. (Quality) asks us to review a National Labor Relations Board (NLRB or Board) order dismissing its application for attorney's fees and costs under the Equal Access to Justice Act (EAJA). 5 U.S.C. § 504 (1988). We conclude that the Board abused its discretion by dismissing the entire application, and grant in part Quality's petition for review. We remand the case for calculation of attorney's fees in accordance with this opinion.

We have already related the underlying facts of this dispute in *NLRB v. Quality C.A.T.V., Inc.*, 824 F.2d 542 (7th Cir.1987), so we limit our overview to the essentials. Quality is a small company that constructs and operates cable television systems. On July 22, 1982, two supervisors and four crew members were stringing television ca-

---

\* The Honorable John C. Shabaz, District Judge for the Western District of Wisconsin, sitting by designation.

ble to some utility poles near New Market, Indiana. The poles carried telephone lines but no power lines. After it began to rain early that afternoon, Jeffrey Fairfield, the head supervisor, instructed the crew to halt work. Fairfield, the other supervisor, and one crew member decided to wait out the storm at a nearby coffeeshop and drove off in a company vehicle. However, two of the crew members, Jerry Reners and Charles Boyle, Jr., chose to continue working, apparently to avoid having to re-climb the poles later in the day. A third crew member, Brian Holt, stayed behind to assist Reners and Boyle. Shortly thereafter, Reners, Boyle, and Holt stopped work and jumped in another company truck, intending to join the others at the coffeeshop. The truck failed to start, so they waited for a time, in hopes that the others might come back to get them. While waiting in the truck, Boyle and Reners decided that they would no longer work that day because they were upset that their supervisors failed to come back to check on them during the storm. They eventually walked through the rain to the coffeeshop, where they were greeted, to their chagrin, by their chuckling (and dry) co-workers.

When the rain subsided, the crew returned to the job site, but Boyle and Reners, sticking to their earlier decision, refused to work. As a result, Fairfield was forced to dismiss the entire crew for the day because he needed a full crew to effectively string cable. Fairfield reported this incident to Quality's president, who told Fairfield that Boyle and Reners had by their actions voluntarily quit. When Boyle and Reners returned to work the next day, Fairfield told them that they had relinquished their jobs.

General Counsel for the NLRB filed a complaint against Quality, alleging that it committed an unfair labor practice under § 8(a)(1) of the National Labor Relations Act (the Act), 29 U.S.C. § 158(a)(1), by dismissing Boyle and Reners for engaging in concerted activity to protest unsafe working conditions. The administrative law judge (ALJ) conducted a hearing and dismissed the complaint, concluding that conditions were in fact safe and that the moti-

vation behind the work stoppage had nothing to do with safety. The General Counsel filed exceptions to the decision, challenging the dismissal of the "worker safety" theory and adding a new "discomfort" theory which alleged that Boyle and Reners had engaged in a work stoppage to protest uncomfortable working conditions (*i.e.*, having to work while wet). *See, e.g., NLRB v. Washington Aluminum Co.*, 370 U.S. 9, 15, 82 S.Ct. 1099, 1103, 8 L.Ed.2d 298 (1962) (work stoppage to protest lack of heat during harsh winter considered protected, concerted activity). A divided panel of the Board decided that the discomfort theory was properly before it for consideration, concluding that even though it was not raised in the General Counsel's original complaint, it was nonetheless fully litigated at the hearing. Relying on this theory, the Board held that Quality violated § 8(a)(1) by dismissing Boyle and Reners. *Quality C.A.T.V., Inc.*, 278 N.L.R.B. 1282 (1986).

We vacated and remanded, after holding that Quality's due process rights had been violated. *Quality C.A.T.V.*, 824 F.2d at 548–49. We concluded that by advancing a new theory after the close of evidence, the General Counsel had deprived Quality of notice of, and the ability to prepare a defense to, the charges. *Id.* at 548 (citing *Stokely–Van Camp, Inc. v. NLRB*, 722 F.2d 1324, 1331 (7th Cir.1983)). On remand, the Board dismissed the complaint against Quality after soliciting position statements from both parties. It determined that the original worker safety theory lacked support in the record, and that our decision, as the law of the case, precluded it from reopening the record on the discomfort theory. *Quality C.A.T.V., Inc.*, 289 N.L.R.B. 648 (1988).

Quality then filed an EAJA application to recover the attorney's fees and expenses it incurred in defending this action. The EAJA—which was designed to eliminate the financial disincentive individuals and small companies face in challenging unreasonable governmental action, *see Commissioner, INS v. Jean*, 496 U.S. 154, 163, 110 S.Ct. 2316, 2321, 110 L.Ed.2d 134 (1990)—provides that when an agency conducts an

adversary adjudication and loses, it must award fees and other expenses incurred by the prevailing party in defending that action. 5 U.S.C. § 504(a)(1); *Temp Tech Indus., Inc. v. N.L.R.B.*, 756 F.2d 586, 589 (7th Cir.1985). The agency can avoid paying an award only by demonstrating that its position in the proceeding was "substantially justified," or that special circumstances make an award unjust. 5 U.S.C. § 504(a)(1). A position is substantially justified if it "has a reasonable basis both in law and fact." *Temp Tech*, 756 F.2d at 590 n. 4; *see also Pierce v. Underwood*, 487 U.S. 552, 563, 108 S.Ct. 2541, 2549, 101 L.Ed.2d 490 (1988).

The ALJ dismissed Quality's EAJA application, concluding that the General Counsel's position on remand was substantially justified, and therefore that Quality was not entitled to fees to cover any stage of this litigation.[1] A divided Board affirmed in *Quality C.A.T.V., Inc.*, 302 N.L.R.B. No. 69, slip op. (Apr. 5, 1991), concluding that the General Counsel acted with substantial justification throughout the proceedings. A dissenting member disagreed, arguing Quality was entitled to the fees and costs it incurred after remand. *Id.* at 5 n. 3 (Member Devaney, dissenting).

■ Quality argues on appeal that the General Counsel's actions at every stage of this litigation lacked substantial justification. Specifically, Quality asserts that the General Counsel acted unreasonably prior to remand in filing a complaint against Quality, in filing exceptions to the ALJ's decision dismissing the suit, and in filing a petition for enforcement of the Board's order. Quality further contends that, after remand, the General Counsel continued to act without justification in pressing unsupportable claims and in fighting this application for an EAJA award. We review the Board's decision to dismiss an EAJA appli-

cation for abuse of discretion. *See Pierce*, 487 U.S. at 559, 108 S.Ct. at 2547; *Temp Tech*, 756 F.2d at 589.

We first consider the General Counsel's allegation that Boyle and Reners were fired for engaging in concerted activity to protest unsafe working conditions. Quality argues that the charge was unreasonable because clear evidence demonstrated that no electrical hazard existed and that what Boyle and Reners were actually protesting was the lack of concern exhibited by their supervisors. The only direct evidence supporting the safety theory was Reners' statement that he thought the poles carried electricity, evidence the ALJ appropriately dismissed in the face of overwhelming testimony to the contrary. Quality asserts the General Counsel had a duty to resolve this conflicting evidence before pressing charges, and acted unreasonably in failing to conduct a simple preliminary investigation into the matter. *See Phil Smidt and Son, Inc. v. NLRB*, 810 F.2d 638, 643 (7th Cir.1987) (government acted unreasonably in failing to resolve, before filing a complaint, conflicting evidence that weighed heavily against its position). Moreover, Quality argues, the hearing revealed beyond doubt that safety had nothing to do with the workers' grievance. Despite that fact, Quality maintains, the General Counsel continued to act unreasonably on appeal before the Board by persisting in pressing the worker safety theory.

The General Counsel counters that he raised the worker safety theory before the ALJ and Board because it was supported by a significant body of evidence. That evidence included the fact that Boyle and Reners were regularly required to climb telephone poles, many of which carried or came in close proximity to power lines, and had never received any safety training re-

---

1. The ALJ erroneously concluded that Quality did not "prevail" by achieving a remand of the case and hence was not entitled to fees to cover that stage of the litigation. While it is true that an applicant that simply gets its case remanded for further agency action is generally not considered a prevailing party under the EAJA, *see Sullivan v. Hudson*, 490 U.S. 877, 887, 109 S.Ct. 2248, 2255, 104 L.Ed.2d 941 (1989), an applicant

that succeeds on remand, as did Quality in this case, is a prevailing party, entitled to seek fees for the entire course of litigation, both before and after remand. *Id.* at 892, 109 S.Ct. at 2258. Indeed, a prevailing party in that situation is presumptively entitled to an award covering all phases of the litigation. *Jean*, 496 U.S. at 161, 110 S.Ct. at 2320.

garding work near power lines. Moreover, the crew was scheduled to climb poles holding power lines later that same day, and, just a few weeks earlier, had been involved in an incident in which television cable was accidently wrapped around a power line. Finally, and most significantly, both Reners and Boyle were wet when they decided to halt work on July 22 and, as the ALJ noted, it is common knowledge that it is more dangerous to work around electricity when wet. The General Counsel maintains that one could have inferred from this evidence that Reners and Boyle refused to work at least in part based on safety concerns. Although the ALJ chose not to make that inference, the General Counsel contends he was nonetheless justified in continuing to pursue the worker safety theory before the Board, particularly when "the right of workers to act together to better their working conditions" has been so broadly construed. *Washington Aluminum*, 370 U.S. at 14, 82 S.Ct. at 1102; *see also Dreis & Krump Mfg. Co. v. NLRB*, 544 F.2d 320, 327 (7th Cir.1976). The General Counsel adds that whether Boyle and Reners acted reasonably, *Washington Aluminum*, 370 U.S. at 16, 82 S.Ct. at 1103, or accurately assessed a perceived safety problem, *NLRB v. Jasper Seating Co., Inc.*, 857 F.2d 419, 421 (7th Cir.1988), is immaterial to extending protection to their concerted activity. The General Counsel further asserts that he continued to act reasonably in pursuing the worker safety theory before the Board because, as the above discussion makes clear, there was *some* record evidence to support it.

■ We conclude that the General Counsel was substantially justified in *initially* raising and arguing the worker safety theory. Preliminary evidence did suggest the possibility that Reners and Boyle were protesting unsafe working conditions. However, the hearing revealed that the workers were not in fact protesting safety concerns, and the General Counsel was not substantially justified in continuing to pursue what amounted to an unsupportable theory after that point. "Any lingering uncertainty about the case should have evaporated in the face of [Quality's] presentation on the merits." *Leeward Auto Wreckers v. NLRB*, 841 F.2d 1143, 1148 (D.C.App.1988). Thus, Quality is entitled to recover the fees and expenses incurred in defending this claim from that point forward. *See Cinciarelli v. Reagan*, 729 F.2d 801, 804–05 (D.C.Cir.1984) (partial awards contemplated under EAJA).

Our conclusion finds support from *Leeward Auto Wreckers*, 841 F.2d at 1148–49, a case in which an employer presented an iron clad defense to unfair labor practice charges at a hearing before the ALJ. Despite that defense, the General Counsel continued to pursue the charge by filing post-trial briefs. The court held that the General Counsel lost the protective mantle of substantial justification at the close of the hearing and should not have pursued the matter any further. Accordingly, the court granted the employer reimbursement for all fees and costs incurred after the ALJ's hearing. *Id.* at 1148. The same reasoning applies here.

■ We next consider the General Counsel's decision to advance a discomfort theory against Quality. Quality notes that by raising a new theory in front of the Board, the General Counsel clearly violated Quality's due process rights. This untenable litigation strategy continued, Quality contends, when the General Counsel filed a petition with this Court to enforce the Board's order, even though it rested on a legal theory which had been advanced in clear violation of established due process caselaw. *See Enerhaul, Inc. v. NLRB*, 710 F.2d 748 (11th Cir.1983) (agency took a position rejected by numerous courts and therefore acted without substantial justification).

The General Counsel contends that the discomfort theory was a reasonable position because the complaint arguably encompassed such a theory and the hearing arguably aired several possible motivations for the work stoppage, including safety, discomfort, and management's attitude toward its workers. The reasonableness of that position is borne out, according to the General Counsel, by authority which holds

that where one issue is pled and fully litigated, the Board may address a separate but substantially overlapping issue without implicating due process concerns. *See, e.g., NLRB v. Western Temporary Servs, Inc.*, 821 F.2d 1258, 1265 (7th Cir.1987); *Alexander Dawson, Inc. v. NLRB*, 586 F.2d 1300, 1304 (9th Cir.1978); *cf. American Boiler Manufacturers Ass'n v. NLRB*, 404 F.2d 547, 556 (8th Cir.1968), *cert. denied*, 398 U.S. 960, 90 S.Ct. 2162, 26 L.Ed.2d 546 (1970) (Board has an "obligation to decide material issues" that, while not specifically plead, are fully and fairly litigated).

We conclude that the General Counsel acted unreasonably in raising the new discomfort theory before the Board. As we have already concluded in our prior decision in this case, "having failed to prove his case to the ALJ on the [worker safety] issue alleged in the complaint, [the General Counsel] chose to shift ground to the new claim of discomfort on appeal to the Board." *Quality C.A.T.V.*, 824 F.2d at 548. Indeed, in that decision we observed that nothing in the complaint mentioned uncomfortable working conditions, nor was there any general language that could be reasonably construed to present such an allegation, and concluded that we were "not presented with the question whether Quality received effective notice by way of the pleadings because Quality *never* received notice through the pleadings." *Id.* at 545. We then examined whether the discomfort theory was, nonetheless, fully and fairly litigated by the parties, and concluded that "no evidence" in the record suggested any theory of violation except that of physically hazardous conditions, and that the ALJ had made it abundantly clear that the unsafe conditions claim was the only issue before the parties. *Id.* at 546. Finally, we further observed that the General Counsel did not at any point "in the hearing claim that discomfort, rather than (or in addition to) fear of a physical hazard, prompted Boyle and Reners' refusal to work" and concluded that Quality "received no notice of any discomfort or other claim unalleged in the complaint even during the course of the evidentiary pro-

ceedings themselves." *Id.* at 547. Under the circumstances, the General Counsel acted unreasonably in pressing a theory never pled, litigated, or added to the complaint by way of amendment.

Quality next asserts that the General Counsel's conduct on remand was even more egregious: not only did he continue to press the worker safety and discomfort theories, but, amazingly, argued that Quality was *not* denied due process before the Board, an issue unquestionably resolved by this Court on appeal. Remand was not an invitation to rehash the worker safety and discomfort theories, Quality maintains, but simply the result of an insufficient record on appeal from which to finally resolve the case. *Quality C.A.T.V.*, 824 F.2d at 544 n. 2.

The General Counsel responds that reasserting the worker safety and discomfort theories on remand, and further suggesting that the Board consider reopening the record to permit Quality to defend against the discomfort theory, were reasonable positions in light of this Court's statement "express[ing] no opinion or in any way predict[ing] the results the Board [would] reach on remand." *Quality C.A.T.V.*, 824 F.2d at 549 n. 8. That left the door open, maintains the General Counsel, to pursue on remand the theories originally presented to this Court.

We find that the General Counsel's actions on remand also lacked substantial justification. His statement of position to the Board advanced no workable theory, given the law of the case, for finding an unfair labor practice. *See Quality C.A.T.V.*, 302 N.L.R.B. No. 69, slip op. at 5 n. 3 (Member Devaney, dissenting) (General Counsel's options on remand were so limited that it was unreasonable to continue pressing charges against Quality). To be sure, our remand implicitly invited the Board to reopen proceedings, if appropriate, on the discomfort theory. The only reasonable position that the General Counsel could have taken on remand was to ask the Board to give Quality a chance to make its case on the discomfort theory. Although the General Counsel did mention that possibility, the thrust of

his position was that the discomfort and safety theories were inseparable, that Quality had not been denied due process, and that the Board should reaffirm without further ado its earlier finding of an unfair labor practice. That position was decidedly unreasonable given our posture on the discomfort theory, and the Board's posture on the worker safety theory. (Recall that the Board had earlier explicitly adopted the ALJ's conclusion that safety concerns played *no* role in the protest.)

Finally, we conclude that Quality is entitled to recover fees and costs incurred in seeking this EAJA award. Although the General Counsel argues it was substantially justified in resisting Quality's EAJA application, substantial justification plays no role in determining the availability of an award to cover EAJA fee litigation itself, which is treated as a component part of an integrated case; hence, a prevailing party is presumptively entitled to an award that includes costs associated with fee litigation. *Jean,* 496 U.S. at 161, 110 S.Ct. at 2320 ("Absent unreasonably dilatory conduct by the prevailing party in 'any portion' of the litigation, which would justify denying fees for that portion, a fee award presumptively encompasses all aspects of the civil action.") (footnote omitted).

We remand the case for calculation of attorney's fees in accordance with this opinion; specifically, attorney's fees will lie only for that period commencing after the close of the hearing before the ALJ. The award should not include any fees or expenses incurred in Quality's defense against a second charge under § 8(a)(4) of the Act, one not discussed in this opinion, for retaliating against Reners for filing an unfair labor practice charge. Quality waived that issue by not raising it on appeal.

So Ordered.