NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

JORDAN BUS COMPANY and Denco Bus
Lines, Inc., Respondents.

No. 8788.

United States Court of Appeals
Tenth Circuit.

June 1, 1967.

Nancy M. Sherman, Washington, D. C. (Arnold Ordman, Dominick L. Manoli and Mercel Mallet-Prevost, Washington, D. C., with her on brief), for petitioner.

A. Bob Jordan, Oklahoma City, Okl., for respondent Jordan Bus Co.

Carl Bagwell, Oklahoma City, Okl., for respondent Denco Bus Lines, Inc..

Before MURRAH, Chief Judge, HICKEY, Circuit Judge, and CHRISTENSEN, District Judge.

MURRAH, Chief Judge.

Respondents Jordan Bus Co. and Denco Bus Lines, Inc., deliberately refused to bargain with the certified representative of their employees for the purpose of raising in this unfair labor practice proceeding questions concerning the Board's jurisdiction, the appropriateness of the unit, and the sufficiency of the notice afforded Denco in the underlying representation proceedings. Finding that there was no question of fact and that all questions of law and mixed questions of law and fact had been adjudicated in the precedent representation proceeding, the trial examiner decided this case on the pleadings. He found that Jordan and Denco constituted a single employer, that as a single employer they were engaged in commerce within the meaning of the Act, and that a unit comprised of Jordan and Denco drivers was appropriate for the purposes of collective bargaining. The examiner concluded that the admitted refusal to bargain violated § 8(a) (5) and (1) and ordered the respondents to bargain upon request and to post notices. The Board affirmed the examiner's findings and order, and now petitions for enforcement. We grant the petition.

Jordan and Denco are small bus lines operating in central and southern Oklahoma. Denco's routes are entirely intrastate; Jordan's are intra and interstate. Both are connecting carriers who move

interstate passengers and baggage over their intrastate routes. Both have their main offices and principal places of business in Hugo, Oklahoma, where the two companies share an office.

█ The crux of this lawsuit lies in the Board's finding that respondents constitute a single employer. If this finding is supported by substantial evidence, the Board could properly consider the respondents' operations together for jurisdictional purposes. See Radio and Television Broadcast Technicians Local Union 1264 v. Broadcast Service of Mobile, Inc., 380 U.S. 255, 85 S.Ct. 876, 13 L.Ed.2d 789 and cases cited; N.L.R.B. v. City Yellow Cab Co., 6 Cir., 344 F.2d 575. And, a unit composed of the employees of nominally separate entities found to be a single employer is unquestionably an appropriate one.[1] See, e. g. N.L.R.B. v. A. K. Allen Co., 2 Cir., 252 F.2d 37. And see N.L.R.B. v. Groendyke Transport, Inc., 10 Cir., 372 F.2d 137.

█ In its brief the Board refers to various facets of respondents' operations to show the requisite connection with commerce. It is sufficient, however, to note that the revenue realized by Jordan alone from the carriage of passengers over its interstate routes meets the Board's self-imposed standards for transportation enterprises as set out in H. P. O. Service, Inc., 122 N.L.R.B. 394. The Board's policy is to assert jurisdiction over transportation enterprises which realize a minimum of $50,000 gross annual revenue from furnishing interstate transportation services. Jordan took in over $100,000 from its interstate routes in 1963, and over $53,000 in the first six months of 1964.[2] This is sufficient to establish jurisdiction over Jor-

dan, and over Jordan and Denco if they be a single employer. Jordan's reliance on the standards for transit systems established in Charleston Transit Co., 123 N.L.R.B. 1296, is misplaced, for this is not a transit system case.

██ We turn then to the crucial question whether Jordan and Denco are a single employer. The Board will consider separate corporations as one for jurisdictional and other purposes if they are sufficiently integrated, and in determining the extent of integration the relevant factors are interrelation of operations, centralized control of labor relations, common management, and common ownership or financial control. See Radio and Television Broadcast Technicians Local Union 1264 v. Broadcast Service of Mobile, Inc., supra; Pizza Products Corp. v. N.L.R.B., 6 Cir., 369 F.2d 431; N.L.R.B. v. A. K. Allen Co., supra; W. B. Johnston Grain Co. v. N.L.R.B., 10 Cir., 365 F.2d 582; N.L.R.B. v. W. L. Rives Co., 5 Cir., 328 F.2d 464.

It stands admitted that there was a time when one man, A. R. Jordan, owned and operated both respondent companies, and they then constituted a single employer. See footnote 1, supra. Respondents contend, however, that when A. R. Jordan in August of 1962 transferred his stock in Jordan Bus to his son, A. Bob Jordan, the two companies began a separation process, and they are now independently operated to the extent that they may no longer be considered a single employer. The Board found otherwise, on the following undisputed facts gleaned largely from the testimony of A. Bob Jordan.

(1) In several instances the same bus and driver is used to service an entire route, although part of the route is op-

---

1. Jordan admits in its brief that prior to August, 1962, respondents constituted a single employer, and as such their employees comprised an appropriate bargaining unit. See Jordan Bus Co. and Denco Bus Lines, Inc., 107 N.L.R.B. 717.

2. The representation petition was filed in July of 1964, the unfair labor practice occurred in November of 1964, and the

unfair labor practice complaint was issued in January of 1965. In these circumstances the Board could properly measure jurisdiction by respondents' operations during the calendar year 1964. See Teamsters, Chauffeurs, Warehousemen & Helpers Union, Local 386 (Hobbs-Parsons Co.), 128 N.L.R.B. 1031; Jos. McSweeney & Sons, 119 N.L.R.B. 1399.

erated under the Denco franchise and the rest under the Jordan franchise. The drivers receive separate paychecks from each company based on the amount of mileage driven over the respective parts of the route. A. Bob Jordan explained that respondents made these arrangements because "It was felt that the drivers, by running straight through could have better hours, and be able to drive more miles a day, therefore increasing their pay * * *". These drivers are hired by Jordan, but must be approved by the management of both corporations. In this manner four of Jordan's seven drivers work part of the time for Denco, Denco having two drivers of its own who do not drive for Jordan except in an emergency. (2) Jordan leases buses from A. R. Jordan and uses some of them on both Jordan and Denco routes. Jordan provides maintenance on these buses and bills Denco for its proportionate share. (3) Jordan and Denco share an office in Hugo. The office personnel are Jordan employees, but they perform work for both companies and Denco is billed for a proportionate share of the cost. The companies use the same bookkeeper, but keep separate books. (4) Although the stockholders and management of the two companies are different people, they are all closely related members of the same family. (5) Jordan's supervisor "indirectly" supervises Denco employees in that when he "shapes up" a Jordan driver he automatically does the same for Denco. Furthermore, although paid solely by Jordan, he is the dispatcher for drivers covering both Jordan and Denco segments of the same route. There is thus a degree of common management between the two companies.

■■ The Board was of the opinion that the functional integration, physical proximity, and degree of common man-

agement demonstrated by the foregoing facts warranted a finding that Jordan and Denco are a single employer. This finding is clearly supported by substantial evidence. To be sure, the two companies are separately owned. But this factor is not controlling, and indeed is the factor usually given least weight by the Board. See the Board's statement of policy reproduced in Sakrete of Northern California, Inc. v. N.L.R.B., 9 Cir., 332 F.2d 902, footnote 4. The Board usually stresses the factors tending to show operational integration, as it did in this case. And, we think the evidence shows a sufficient community of operations, labor relations, and management to support the finding in this case.[3] See Hirsch Broadcasting Co., 116 N.L.R.B. 1780.

The remaining question is whether Denco was accorded due process in the representation proceedings. Denco contends it was not, and that those proceedings were a nullity as to it. The facts surrounding the asserted denial of due process are that in its original representation petition the union[4] sought only to represent Jordan drivers, and accordingly only Jordan was given notice of the evidentiary hearing set for August 18, 1964. At that hearing evidence indicating the close relationship between Jordan and Denco was adduced, and the hearing was adjourned until August 20. On the 18th the Regional Director sent a teletype to Jordan and Denco giving notice of the August 20 hearing and stating that evidence would be taken on the question whether Jordan and Denco constituted a single employer. Denco appeared through its counsel at the August 20 hearing, and objected to the sufficiency of the notice; counsel further alleged that even the notice which was given was misaddressed, and that he did not learn of the hearing until the morning of

---

3. In its brief Jordan maintains that since the representation hearing it has moved its office from Hugo to Oklahoma City. While we take no cognizance of matters not in the record, it seems clear that the operational integration brought about be-

cause the two companies to a large extent use the same drivers would only in minor respects be lessened by such a move.

4. Brotherhood of Railroad Trainmen, AFL-CIO.

the 20th and only then by virtue of his close relationship with Jordan's counsel. At the close of the hearing, the examiner made this statement:

"In an off the record discussion, Mr. Bagwell (Denco's attorney) suggested that Denco's concern here was with not having sufficient time to study the law and prepare testimony and give information to the Board for the notice that he received or did not receive, but that his concern was only that and that he intended to make all facts available to the Board, but that time would be needed to do this. I suggested to Mr. Bagwell that there was considerable testimony in the record concerning the relationship with Denco and Jordan and suggested to him that upon receiving the record and examining it, if in his opinion Denco was in any way prejudiced by the testimony there being incomplete or contrary to what he may know the facts to be that a motion to reopen the record would at that time be appropriate so that Denco could present any additional evidence necessary to the disposition of this case."

Thereafter, the union was permitted over Jordan and Denco's objection to amend its petition to include the Denco drivers, and the hearing was closed. On September 2, the day briefs were due, Denco telegraphed the Regional Director seeking additional time to file briefs, and a further hearing. The requests were denied the next day—the request for additional briefing time because untimely filed, and the request for a further hearing because "no basis [has] been stated for such further hearing."

■ The Board does not deny that the August 18 notice to Denco was misaddressed, and that Denco did not learn of the hearing until the morning of the 20th. And, although the Board's regulations make no provision for the minimum length of time required between notice and the representation hearing, it is certain that notice on the day of the hearing is not reasonable notice. See Lane Cotton Mills, 9 N.L.R.B. 952. The

Board advances the somewhat incredible contention that since Jordan and Denco constituted a single employer, notice to Jordan was notice to Denco. But, this assumes the existence of a single employer status—the very issue to be resolved at the hearing—and Denco is certainly entitled to a reasonable opportunity to present evidence on this issue. We find nothing to the contrary in the cases cited by the Board, see N.L.R.B. v. Deena Artware, Inc., 6 Cir., 310 F.2d 470; Potter v. Castle Construction Co., 5 Cir., 355 F.2d 212.

■ The hearing examiner recognized the deficiency in the notice to Denco, and as we have noted, suggested that if, after a review of the record previously made, Denco felt it had additional evidence to present on the issue of the relationship between Jordan and Denco, a motion to reopen the record would be appropriate. It does not appear that Denco at any time has stated a desire to introduce evidence which would in any way do violence to the findings based on the evidence in the record. It gave no reason at all when it requested a further hearing on September 2. It did state in its petition to review the direction of election, and in its objection to conduct affecting the results of the election that if it had been given proper notice, it would have introduced evidence that its volume of interstate business was less than $50,000 annually, that it is separate from Jordan with different owners and officers, and that "in no way is there joint management and control exercised between the two carriers."

In view of what we have said on jurisdiction, it is obvious that only evidence of a lack of common management could aid Denco's case. As to that, it is important to note that the Board's finding of a degree of common management is based on the testimony of A. Bob Jordan and the Jordan supervisor himself. Neither the September 2 application for further hearing nor the briefing on appeal alleges specific facts indicating that the basic facts are not in accord with the testimony of these two witnesses. In

the absence of some specific representation that contrary evidence is available, we cannot see any valid grounds for further hearing. Certainly, we cannot say in these circumstances that the Board's action operated to deprive Denco of the right to full hearing after notice. Cf. N.L.R.B. v. Central Oklahoma Milk Producers Ass'n, 10 Cir., 285 F.2d 495.

The order will be enforced.