**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 18 1998**

**PATRICK FISHER**
**Clerk**

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

NATIONAL LABOR RELATIONS
BOARD,

     Petitioner,

v.

I.W.G., INC.; CON-BRU, INC., doing
business as AAA FIRE SPRINKLER, INC.;
ROBERT B. GORDON, an individual; and
ARLENE, INC., doing business as AAA
FIRE SUPPRESSION, INC.,

     Respondents.

ROAD SPRINKLER FITTERS LOCAL
UNION 669, U.A., AFL-CIO,

     Intervenor.
_____

ROBERT B. GORDON,

     Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD,

     Respondent.

ROAD SPRINKLER FITTERS LOCAL
UNION 669, U.A., AFL-CIO,

     Intervenor.

No. 96-9548

No. 96-9550

**APPLICATION FOR ENFORCEMENT OF AN ORDER OF THE
NATIONAL LABOR RELATIONS BOARD
(Nos. 27-CA-11771 and 27 CA-11870 for Case No. 96-9548)
and
PETITION FOR REVIEW OF AN ORDER OF THE
NATIONAL LABOR RELATIONS BOARD
(322 NLRB No. 12 for Case No. 96-9550)**

---

James W. Bain (Peter A. Gergely with him on Petitioner Gordon's Opening Brief), Brega & Winters P.C., Denver, Colorado, for Robert B. Gordon.

Vincent J. Falvo, Jr., Attorney (Frederick L. Feinstein, General Counsel; Linda Sher, Associate General Counsel; Aileen A. Armstrong, Deputy Associate General Counsel; Charles Donnelly, Supervisory Attorney; and Robert J. Englehart, Attorney, on the brief), National Labor Relations Board, Washington, D.C., for National Labor Relations Board.

William W. Osborne, Jr. (Robert H. Morsilli with him on the brief), Osborne Law Offices, P.C., Washington, D.C., for Intervenor Road Sprinkler Fitters Local Union No. 669, U.A., AFL-CIO.

---

Before **PORFILIO, McKAY,** and **LUCERO,** Circuit Judges.

---

**McKAY,** Circuit Judge.

---

The National Labor Relations Board [NLRB or Board] petitions this court for enforcement of its order against Robert B. Gordon, I.W.G., Inc. [I.W.G.], Con-Bru, Inc. [Con-Bru], and Arlene, Inc. [Arlene]. Respondent, Mr. Gordon, cross-petitions this court for review of the Board's decision. The case came

before the Board on a complaint issued by the General Counsel, following an investigation of charges filed by Road Sprinkler Fitters Local Union No. 669, U.A., AFL-CIO [the Union]. After an administrative law judge [ALJ] conducted a hearing on the charges set forth in the Board's complaint, the Board adopted the ALJ's decision with a slight modification. The Board essentially decided that Respondent "abandoned and subsequently created" several corporations, namely, I.W.G., Con-Bru, and Arlene, "primarily to avoid paying his employees pursuant to an extant collective-bargaining agreement and to evade a statutory obligation to bargain with the Union over the terms and conditions of employment." I.W.G., Inc., 322 N.L.R.B. No. 12, 1997-1998 NLRB Dec. (CCH) ¶ 16,108, at 33,441 (Aug. 27, 1996). We assume jurisdiction pursuant to 29 U.S.C. § 160(f).

Respondent claims that there is a procedural impediment to the Board's conclusion that Arlene was an alter ego of I.W.G. and Con-Bru. [1] He contends that because the unfair labor practice complaint filed September 2, 1993, did not allege that Arlene was an alter ego, he was not given notice sufficient to adequately prepare and present a defense to a charge that Arlene was an alter ego

---

[1] I.W.G., Con-Bru, and Arlene all failed to file exceptions with the Board to the ALJ's recommended decision and order against them. None of them filed an answer to the Board's application for enforcement of its order. Since the Arlene alter ego issue was never pled, we will not enter a default judgment on that issue. In all other respects, we grant the Board's Motion for Entry of Default Judgment against those corporate respondents. See Fed. R. App. P. 15(b); NLRB v. Bell Co., 561 F.2d 1264, 1266 n.2 (7th Cir. 1977).

of I.W.G. and Con-Bru, and that Respondent was personally liable for Arlene's unfair labor practices. The Board urges us to hold that, regardless of whether the Arlene alter ego issue was specifically pled, it was properly decided by the Board because it was fully and fairly litigated. See NLRB Br. at 26-28; Facet Enters., Inc. v. NLRB, 907 F.2d 963, 972 (10th Cir. 1990); NLRB v. Tricor Prods., Inc., 636 F.2d 266, 271 (10th Cir. 1980); NLRB v. Thompson Transp. Co., 421 F.2d 154, 155 (10th Cir. 1970). As we explained in Facet Enterprises, "variation between an unfair labor practice charged in the complaint and one found by the Board does not deprive a respondent of due process where it is clear that the respondent 'understood the issue and was afforded full opportunity to justify [its actions].'" Facet Enters., 907 F.2d at 972 (quoting NLRB v. MacKay Radio & Tel. Co., 304 U.S. 333, 350 (1938)).

After reviewing the record and the Board's contentions, we hold that Respondent was not accorded his due process rights as to the Arlene alter ego claim. In its Decision and Order, the NLRB found that the Arlene alter ego claim had a sufficient connection to the complaint for Respondent to anticipate the Arlene alter ego issue. See I.W.G., Inc., 1997-1998 NLRB Dec. (CCH) at 33,443. The Board articulated two reasons for its decision: (1) Arlene was named as a respondent in the proceeding along with I.W.G., Con-Bru, and Respondent Mr. Gordon; and (2) "the gravamen of the General Counsel's complaint is that Gordon

-4-

created and abandoned corporate entities in order to evade I.W.G.'s contractual and statutory obligations to its employees and the Union." Id. The Board's summary of the complaint is inaccurate; nowhere does the complaint allege Respondent "created and abandoned" Arlene. Id. We agree with the Board's dissenting opinion that the General Counsel's complaint drew a clear distinction between (1) I.W.G. and Con-Bru and (2) Arlene. Id. at 33,448 (Member Cohen, dissenting). The complaint alleged that Con-Bru, I.W.G., and Respondent were a single employer or alter egos. See Petitioner's App., Vol. I at 165 (Order Revoking Settlement Agreement and Amended Consolidated Complaint and Notice of Hearing at 2(d)). Arlene was only alleged to be a successor to I.W.G./Con-Bru with notice of their potential liability to remedy unfair labor practices, i.e., a Golden State successor. See id. at 2(e)-(g); Golden State Bottling Co. v. NLRB, 414 U.S. 168, 184-85 (1973). Our review of the record leads us to conclude that Respondent read the complaint to mean what it said; the complaint did not give Respondent notice of an implied and unalleged theory of creating and abandoning multiple corporate entities.

The Board's second articulated basis for concluding Respondent had notice was the naming of Arlene in the complaint. The fact that Arlene was named in the complaint does not by itself provide a sufficiently close connection to the alter ego claim to warrant adequate notice of that unalleged claim against Arlene. Our

review of the facts of this case convinces us that Respondent was unaware that the Arlene alter ego claim was raised in the proceeding. Even during the course of the evidentiary hearing, Respondent received no notice of the claim that Arlene was an alter ego. Although the General Counsel amended the complaint to dismiss Connie Gordon as a party, see Petitioner's App., Vol. I at 196, he intentionally did not amend the complaint to add the Arlene alter ego claim. See Petitioner's App., Vol. II at 687; NLRB v. Tamper, Inc., 522 F.2d 781, 788 n.9 (4th Cir. 1975). The ALJ never advised the parties that he would consider an alter ego claim against Arlene. As in NLRB v. Pepsi-Cola Bottling Co. of Topeka, Inc., 613 F.2d 267, 274 (10th Cir. 1980), the "case was complex and confusing . . . [with] not only a number of charges but [] change[s] of ownership." Like the respondent in Pepsi, Respondent tried to resolve the confusion about the General Counsel's litigation theories. See id. at 273. Respondent's counsel specifically asked "if in the brief we have to address an alter ego claim between I.W.G., Con-Bru, and Arlene, or just a successorship claim against Arlene." Petitioner's App., Vol. II at 689. The ALJ responded, "[T]he Board cases are clear -- you look to the pleadings." Id. Because Respondent never received notice of the Arlene alter ego claim through the pleadings, the first time Respondent was informed that an alter ego claim was alleged against Arlene was in the Union's posthearing brief filed prior to the ALJ's decision. Cf. Stokely-

-6-

Van Camp, Inc. v. NLRB, 722 F.2d 1324, 1331 (7th Cir. 1983) (identical conduct held to be a "clear violation of [Respondent's] due process rights"). Although the ALJ indicated that he would only address the claims in the pleadings, he recommended liability against Respondent on a claim unalleged in the complaint.

Clearly, the Arlene alter ego theory was not fully and fairly litigated. The NLRB asserted in its order that the Arlene claim was fully and fairly litigated because "considerable evidence" relevant to the Arlene alter ego claim was presented and challenged at the hearing. I.W.G., Inc., 1997-1998 NLRB Dec. (CCH) at 33,443. "But the simple presentation of evidence important to an alternative claim does not satisfy the requirement that any claim at variance from the complaint be 'fully and fairly litigated' in order for the Board to decide the issue without transgressing [Respondent's] due process rights." NLRB v. Quality C.A.T.V., Inc., 824 F.2d 542, 547 (7th Cir. 1987) (quoting Pepsi-Cola Bottling Co., 613 F.2d at 274); see Conair Corp. v. NLRB, 721 F.2d 1355, 1372 (D.C. Cir. 1983) ("'[T]he introduction of evidence relevant to an issue already in the case may not be used to show consent to trial of a new issue absent a clear indication that the party who introduced the evidence was attempting to raise a new issue.'") (quoting Cioffe v. Morris, 676 F.2d 539, 542 (11th Cir. 1982)), cert. denied sub nom. Local 222, Int'l Ladies' Garment Workers' Union, AFL-CIO v. NLRB, 467 U.S. 1241 (1984); Montgomery Ward & Co. v. NLRB, 385 F.2d 760, 763 (8th

Cir. 1967) ("'Evidence without a supporting allegation cannot serve as the basis of a determination of an unfair labor practice.'") (quoting Engineers & Fabricators, Inc. v. NLRB, 376 F.2d 482, 485 (5th Cir. 1967)).  This court has stated, "Failure to clearly define the issues and advise an employer charged with a violation of the law of the specific complaint he must meet and provide a full hearing upon the issue presented is, of course, to deny procedural due process of law." J.C. Penney Co. v. NLRB, 384 F.2d 479, 483 (10th Cir. 1967).  From the facts of this case, we think it is clear the Board made a finding which was neither charged in the complaint nor litigated at the hearing.

The Board contends that even if Respondent was denied due process, the remedy of another hearing is unnecessary because Respondent has not identified specific, unconsidered evidence that contravenes the Arlene alter ego theory.  See NLRB Br. at 32.  We disagree.  In his brief, Respondent articulates unconsidered evidence with sufficient specificity to merit a hearing that adequately comports with procedural due process.  See Robert B. Gordon's Opening Br. at 30-31.  Under the facts of this case,[2] we agree with our sister circuits that "[s]peculation

---

[2] We recognize that NLRB v. Jordan Bus Co., 380 F.2d 219, 223-24 (10th Cir. 1967), appears to stand for a contrary view.  However, we note that the issue of whether due process was accorded is heavily dependent upon the circumstances of each case.  See Pergament United Sales, Inc. v. NLRB, 920 F.2d 130, 136 (2d Cir. 1990) ("[W]hether a charge has been fully and fairly litigated is so peculiarly fact-bound as to make every case unique; a determination of whether there has been full and fair litigation must therefore be made on the record in each case.").

by reviewing courts regarding whether additional evidence might exist is a chancy endeavor at best, and it is one we refuse to undertake where the complete lack of notice entirely disabled [Respondent's] counsel from taking any steps at the evidentiary hearing to defend against the unannounced claim." Quality C.A.T.V., Inc., 824 F.2d at 548; accord Drug Package, Inc. v. NLRB, 570 F.2d 1340, 1345 (8th Cir. 1978) (due process violation merits new hearing if company "*might have* litigated the matter differently") (emphasis added); Rodale Press, Inc. v. F.T.C., 407 F.2d 1252, 1257 (D.C. Cir. 1968) ("The evil . . . is not remedied by observing that the outcome would perhaps or even likely have been the same. It is the *opportunity* to present argument under the new theory of violation, which must be supplied.") (emphasis added). But see NLRB v. Jordan Bus Co., 380 F.2d 219, 223-24 (10th Cir. 1967).

The Board pierced the corporate veils of each of the three corporate respondents to find Respondent Mr. Gordon personally liable. Whether a

---

In Jordan Bus Co., we concluded that the respondent had received a meaningful opportunity to prepare and present its case. See Jordan Bus Co., 380 F.2d at 224. In that case, unlike this one, the respondent was afforded actual notice in time to present evidence on the issue at the evidentiary hearing. See id. at 223. Because the respondent had actual notice prior to the evidentiary hearing, we proceeded to determine whether the evidentiary record was complete with regard to the challenged issue and whether any prejudice to the respondent resulted. In the case at bar, however, Respondent never had any chance to present evidence because he never received notice of the unalleged claim until after the close of the evidentiary hearing.

corporate veil ought to be pierced is a question of law, and we give "great weight" to the Board's determination that the situation justified piercing and uphold that determination if it is within "reasonable bounds." NLRB v. Greater Kansas City Roofing, 2 F.3d 1047, 1051 (10th Cir. 1993) (internal quotations omitted). The factual findings of the Board are conclusive "if supported by substantial evidence on the record considered as a whole." 29 U.S.C. § 160(e).

It is impossible for us to accurately review the Board's veil-piercing analysis because it is based in substantial part on the unlitigated conclusion that Arlene is a single employer/alter ego of I.W.G. and Con-Bru. The two-prong analysis provided by Greater Kansas City Roofing for veil piercing was not applied to each corporate respondent individually; rather, evidence of the operations of I.W.G., Con-Bru, and Arlene was combined to support the Board's conclusion that the situation justified piercing. See I.W.G., Inc., 1997-1998 NLRB Dec. (CCH) at 33,446. We therefore remand the issue of Respondent's personal liability to the Board to be analyzed in light of this opinion.

In his petition for review, Respondent Mr. Gordon complains that there was no specific allegation in the complaint addressing the failure of Con-Bru and Arlene to apply the union contract terms to their non-union employees. In his Decision, the ALJ acknowledged that this issue was not specifically alleged by the Board. Attach. to Robert B. Gordon's Opening Br. (I.W.G., Inc., 322 NLRB

-10-

No. 12, at 23-24). However, since none of the respondents, including Respondent Mr. Gordon, filed exceptions with the Board asserting a due process violation, see R., Vol. VI, Doc. 10, at 40-45, we will not review Respondent Mr. Gordon's due process contentions on appeal. See Micheli v. Director, Office of Workers' Compensation Programs, 846 F.2d 632, 635 (10th Cir. 1988). Additionally, because neither Con-Bru nor Arlene filed exceptions with the Board or filed an answer to the Board's application for an enforcement order, we will not review the Board's reasoning for applying the "make whole" remedy to the Con-Bru and Arlene employees.

We **deny** Respondent's Motion to Strike the Union-Intervenor's Brief. We also **deny** Respondent's Motion to Supplement the Record with his Post-Hearing Brief to the ALJ because that brief was unnecessary to our determination of this case. We hold that, based on the record on appeal, the notice to Respondent and Arlene with respect to the Arlene alter ego claim was insufficient to satisfy due process standards and that this issue was not fairly and fully litigated.[3] The Board's order is **enforced in part and denied in part**, in accordance with the

---

[3] We are not persuaded by, and do not discuss at length, Respondent's argument that the Board engaged in misconduct justifying an equity court in refusing relief because of bad faith or unclean hands. See Robert B. Gordon's Reply Br. at 19.

views expressed in this opinion.  We **remand** for proceedings consistent with this opinion.