**In re Mark A. EDWARDS, Debtor.**

**The Hardesty Company, Inc. d/b/a Mid–Continent Concrete Co., Plaintiff,**

**v.**

**Mark A. Edwards, Defendant.**

**Bankruptcy No. 00–43650–S.**

**Adversary No. 01–4025.**

United States Bankruptcy Court, E.D. Texas, Sherman Division.

Oct. 4, 2001.

Frank L. Broyles, Goines, Underkofler, Crawford & Langdon, James P. Moon, Dallas, TX, for debtor.

S. Todd Barton, Carrington, Coleman, Sloman & Blumenthal, Dallas, TX, for plaintiff.

## MEMORANDUM OPINION

DONALD R. SHARP, Chief Judge.

NOW before the Court is the Plaintiff's Motion For Summary Judgment filed by The Hardesty Company, Inc. d/b/a Mid–Continent Concrete Co. ("Plaintiff"). The Court considered the pleadings filed and the evidence adduced. This opinion constitutes the Court's findings of fact and conclusions of law to the extent required by Fed.R.Bankr.Proc. 7052 and disposes of all issues before the Court.

### FACTUAL AND PROCEDURAL BACKGROUND

The dispute originated when Mark A. Edwards, the Defendant ("Debtor" or "Edwards"), the Debtor in the main case, was president of Edwards Construction Co., a construction company("ECC"), working in Oklahoma. The Hardesty Company ("THC") d/b/a Mid–Continent Concrete Company ("Mid–Continent") supplied concrete to ECC in Oklahoma on the Palazzo Apartments project. The Debtor was a managing officer while the Palazzo work was being performed.[1] ECC owed THC money for materials supplied to the Palazzo project. *Defendant's Motion for Judgment filed on August 9, 2001, p. 2.*[2]

On or about January 21, 2000, Williams Industries, Inc., the general contractor for the Palazzo Apartments project, issued Check No. 43490, payable to Edwards Construction and Mid–Continent in the amount of $153,985.98. The Williams Industries, Inc., check was presented to Mid–Continent for endorsement and Mid–Continent was given ECC's check # 17512, payable to Mid–Continent in the same amount, drawn on ECC's account at Legacy Bank, Texas. *Ex. D2 to the Defendant's Motion for Judgment, Affidavit of Mark Edwards.* Mid–Continent's credit manager, F.T. Milroy, endorsed the check. *Ex. D. to the Defendant's Motion for Judgment, Plaintiff's Responses to Defendant's Motion for Judgment.* Mr. Milroy executed a release of lien. *Ex. A to Defendant's Motion for Judgment.* Thereafter, on January 27, 2000, ECC's check was returned to Mid–Continent for insufficient funds on January 27, 2000.

THC filed suit against Edwards, as an individual, Williams Industries and Hartford Fire Insurance Company in the District Court In And For Tulsa County, State of Oklahoma (C/J. No.2000–02726). Although Edwards was served, he neither answered nor appeared. *Ex. C to the Defendant's Motion for Judgment.* On August 7, 2000, THC obtained a Default Judgment against the Debtor for $153,985.98 in actual damages, prejudgment interest at the rate of 18% per annum from January 21, 2000 to August 7, 2000, in the amount of $14,883.91, attorneys' fees in the amount of $7,335.05, costs in the amount of $199.00 and post-judgment interest at the prevailing rate. *Defendant's Motion for Judgment, p. 3.* At the hearing, the issue on the amount of punitive damages on Counts Two and Three (i.e. fraud and violation of 42 Okla. St. § 152[3]) was reserved. *Ex.C. to the*

---

**1.** Edwards denies he was a managing officer "when all receipt of all payments were received", but he admits being a managing officer on January 21, 2000 the date of the payment in question. *Debtor's Responses to Requests for Admissions.* Edwards Construction Co. is the Debtor in Case No. 00–41194–7 pending before this Court.

**2.** The *Defendant's Motion for Judgment* provides the basis for numerous "undisputed" facts in the chronology of events set forth herein.

**3.** "(1) The amount payable under any building or remodeling contract shall, upon receipt by any contractor or subcontractor, be held as trust funds for the payment of all lienable

**314**

*Defendant's Motion for Judgment.* On September 14, 2000, the Court entered a Judgment Awarding Exemplary Damages in favor of THC against Mark Edwards.

The Debtor filed a voluntary petition under Ch. 7 on December 1, 2000. Thereafter, THC filed its Complaint To Determine Dischargeability of Debts objecting to the discharge of Edwards' debt to THC (the "Complaint"). Thereafter, Plaintiff filed the Motion for Summary Judgment now before the Court for consideration. Defendant responded and the matter was set for hearing on a regular setting.[4]

### DISCUSSION

Summary Judgment is appropriate in bankruptcy proceedings when there is no genuine issue of material fact and moving party is entitled to judgment as a matter of law. *In re McCafferty*, 96 F.3d 192 (6th Cir.1996). The burden of establishing the nonexistence of a "genuine issue" is on the party moving for Summary Judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

One cannot rest on the mere allegations of the pleadings. In *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), the Court held that (1) only disputes over facts that might legitimately effect the outcome are material under Rule 56; (2) the test for determining whether a genuine issue of material fact exists is the same as the test for granting a directed verdict (i.e. whether the evidence is sufficient to sustain a verdict for the non-moving party); and (3) in applying the test the court must view the evidence in the light most favorable to the non-movant and assess its sufficiency according to the evidentiary burden imposed by the controlling substantive law. Under Rule 56(e), the burden shifts. Rule 56(e) requires the opposing party to "set forth specific facts" that demonstrate the existence of a genuine issue for trial.

 The Complaint, as amended, seeks this Court's entry of an order holding THC's claims against Edwards nondischargeable under 11 U.S.C. §§ 523(a)(2)(A), (a)(4) and (a)(6).[5] THC

---

claims due and owing or to become due and owing by such contractors or subcontractors by reason of such building or remodeling contract." *42 Okla. St. § 152(1).*

4. On August 9, 2001, Defendant filed a Motion For Judgment Under Rules 12(c) and 56 of the Federal Rules of Civil Procedure. Plaintiff filed a response to same. At the hearing on the Defendant's Motion For Judgment Under Rules 12(c) and 56 of the Federal Rules of Civil Procedure, the Court inadvertently made references to the Plaintiff's Motion For Summary Judgment. Therefore, that bench ruling was vacated as premature and the Court entered a written Memorandum Opinion and Order on the Defendant's Motion superceding the oral ruling. The Plaintiff's Motion remains on the Court's docket for October 9, 2001, although there is no impediment to entering an order and opinion of Plaintiff's Motion, given that a response has been filed and it is not the custom of this Court to entertain oral argument at hearings

on summary judgment. *Regulation 7056, Local Regulations of Chief Judge Donald R. Sharp. Local Rules of United States Bankruptcy Court for the Eastern District of Texas, Appendix 1001(g).*

5. Under 11 U.S.C. § 523 entitled "Exceptions to discharge":

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
> (2) for money, property, services or an extension, renewal or refinancing of credit, to the extent obtained by—
>> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; . . .
>> (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny; . . . [or]

argues that Edwards' debt to THC is non-dischargeable under 14 U.S.C. § 523(a)(2)(A) because it is "a debt for money, property or services obtained by false pretenses, a false representation or actual fraud." The fraudulent scheme perceived by THC is the exchange of a check for which there was insufficient funds in consideration of the endorsement of the Williams' check and release of liens. THC further contends Edwards violated his fiduciary duty to Mid–Continent by failing to use the funds held in trust to pay Mid–

Continent its "lienable" claims: "[b]ecause of this violation of a fiduciary duty, Mark Edwards' debt to Mid–Continent cannot be discharged under section 523(a)(4) of the Bankruptcy Code because [the] debt is 'for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny.' " [6] THC avers the debt is non-dischargeable pursuant to § 523(a)(6) as it was for "willful and malicious injury by the debtor to another entity or to the property of another entity".[7] The standard of proof

---

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity[.]

*11 U.S.C. § 523(a).*

**6.** In order to prevail in a dischargeability action under § 523(a)(4), a plaintiff must prove: (1) that the debt arose while the debtor was acting in a fiduciary capacity and (2) that the debt was incurred by fraud, defalcation, embezzlement, or misappropriation. *In re Wolfington,* 48 B.R. 920, 923 (Bkrtcy. E.D.Pa.1985). It is well established that a corporate officer is a "fiduciary" of the corporation within the meaning of § 523(a)(4). *Id.* at 924; *In re Cowley,* 35 B.R. 526, 528 (Bkrtcy.D.Kan.1983). It is also clear that "defalcation" is a broader term than embezzlement or fraud. It can be a mere deficit resulting from the debtor's misconduct, even though he derived no personal gain therefrom. *Id.* at 529; *Matter of Moreno,* 892 F.2d 417, 421 (5th Cir.1990).

*In re Townsley,* 195 B.R. 54, 63 (Bkrtcy. E.D.Tex.1996).

**7.** See *Matter of Miller,* 156 F.3d 598, 603 (5th Cir.1998), *cert. denied.,* in which the Fifth Circuit discussed its standard for "willful" and "malicious" for purposes of non-dischargeability subsequent to the *Kawaauhau v. Geiger* ruling concluding there must be either an objective substantial certainty of harm or a subjective motive to cause harm: "The Supreme Court recently answered the 'pivotal question' of whether § 523(a)(6) covers 'acts, done intentionally, that cause injury … or only acts done with the actual intent to cause injury.' " *Kawaauhau v. Geiger,* 523 U.S. 57, 61, 118 S.Ct. 974, 977, 140 L.Ed.2d 90 (1998). The Court's conclusion was that

"[t]he word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Id.* This conclusion was similar to one that the Fifth Circuit had reached in analyzing § 523(a)(6). In *Corley v. Delaney (In re Delaney),* 97 F.3d 800 (5th Cir.1996), this court reaffirmed its earlier holding that "for willfulness and malice to prevent discharge under § 523(a)(6), the debtor must have intended the actual injury that resulted" and not just performed an intentional act that resulted in injury. *Id.* at 802. … The Supreme Court's disposition in Kawaauhau certainly eliminates the possibility that "willful" encompasses negligence or recklessness. See *Kawaauhau,* 523 U.S. at 63–64, 118 S.Ct. at 978 ("We hold that debts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6).").

At least three remaining readings are possible. The standard might be met by any tort generally classified as an intentional tort, by any tort substantially certain to result in injury, or any tort motivated by a desire to inflict injury. We hold that the label "intentional tort" is too elusive to sort intentional acts that lead to injury from acts intended to cause injury. Rather, either objective substantial certainty or subjective motive meets the Supreme Court's definition of "willful … injury" in § 523(a)(6). … The category of intentional torts, however, is broader. The Supreme Court did specifically refer to intentional torts, noting that "the (a)(6) formulation triggers in the lawyer's mind the category 'intentional torts,' as distinguished from negligent or reckless torts." *Kawaauhau,*

for allegations under § 523 is by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 661 112 L.Ed.2d 755(1991); *In re Townsley*, 195 B.R. 54(Bkrtcy.E.D.Tex.1996). The burden is on the objecting party.

The Court has scrutinized the Plaintiff's Motion for Summary Judgment, the exhibits attached in support of same, the Debtor's response to same and the record in this case and concludes the motion should be granted. This Court is of the opinion that Edwards seeks to re-litigate in the bankruptcy forum the state court's determination as to whether, as president of the company, he had the requisite authority and involvement in the process to be found actually liable for and personally liable for the corporate debts. At this point, such arguments are immaterial because this Debtor is faced with a judgment against him by a court of competent jurisdiction—the issues have already been litigated. Thus, the issues this Court must examine are: whether issue preclusion, or collateral estoppel, applies to the findings of the Oklahoma state court and whether this Court must re-litigate the factual issues or may adopt the findings of the Oklahoma

state court and determine whether the debt is non-dischargeable.

■■■ Generally, a default judgment will not be granted preclusive effect because none of the issues was actually litigated.[8] The "actual litigation" requirement of collateral estoppel may be satisfied if the party was afforded a reasonable opportunity to defend himself on the merits but choose not to do so. *See Bush v. Balfour Beatty Bahamas, Ltd. (In re Bush)*, 62 F.3d 1319, 1324 (11th Cir.1995). The history of this issue in the Fifth Circuit, which is controlling here, was discussed by a Mississippi Bankruptcy Court:

> The failure of a defendant to attend the trial does not prevent issue preclusion in a subsequent action, so long as the prior action was actually litigated in the defendant's absence. In *Garner v. Lehrer (In re Garner)*, 56 F.3d 677 (5th Cir. 1995), the Fifth Circuit, applying Texas law on collateral estoppel, gave preclusive effect to a prior state court judgment even though the defendant failed to appear at the trial. In the opinion, the court made a distinction between a "simple default judgment" and a "post-answer default." Once an answer is

---

523 U.S. at 61–63, 118 S.Ct. at 977 ......[W]e hearken back to this original definition of "intentional tort" to determine whether injury is "willful" for § 523(a)(6) purposes. This test is fully consistent with our precedent. Delaney, which remains good law because the Supreme Court in no way contradicted it, equated intending actual injury to a situation in which "the debtor intentionally took action that necessarily caused, or was substantially certain to cause, the injury." Delaney, 97 F.3d at 802. Although Delaney did not address whether a subjective motive to injure would alternatively be sufficient to trigger § 523(a)(6), it would seem peculiar to deem an action causing injury not "willful" when the tortfeasor's action was in fact motivated by a desire to cause injury. *Matter of Miller, Supra.* at 603.

**8.** There is an exception where the losing party has had a full and fair opportunity to participate in the previous litigation, but has engaged in serious obstructive conduct resulting in a default judgment. *See Wolstein v. Docteroff (In re Docteroff)*, 133 F.3d 210, 216–17 (3d Cir.1997) (affirming use of collateral estoppel in bankruptcy discharge proceeding where default entered because debtor wilfully obstructed discovery); *Bush v. Balfour Beatty Bahamas, Ltd. (In re Bush)*, 62 F.3d 1319, 1323–24 (11th Cir.1995) (same; debtor engaged in dilatory and deliberately obstructive conduct); *FDIC v. Daily (In re Daily)*, 47 F.3d 365, 368–69 (9th Cir.1995) (same; debtor deliberately precluded resolution of factual issues by obstructing discovery process). There is no evidence before this court that the Debtor engaged in obstructive conduct.

filed, the plaintiff is unable to obtain a simple default judgment and must offer evidence to satisfy the burden of proof as to the elements of the action. Lehrer had sued Garner in state court. Garner answered the complaint, but did not appear at the trial, and a judgment was entered against him. Garner then filed bankruptcy which prompted the filing of a dischargeability complaint by Lehrer. Lehrer then moved for summary judgment based on the preclusive effect of the state court judgment. In response, Garner asserted that the "fully and fairly litigated" element of issue preclusion had not been met since the trial had been conducted in his absence. In affirming the bankruptcy court and the district court, the Fifth Circuit stated as follows:

> In the state court proceedings, Garner answered Lehrer's complaint with a general denial, and then he failed to appear for trial. The district court conducted a trial in Garner's absence, and "based on the testimony presented to the Court, the Court f[ound] and conclude[d] that Plaintiff, Kenneth Eugene Lehrer [was] entitled to recover judgment against Defendants." This decision was reached after Garner answered Lehrer's complaint and after a trial in which Lehrer put on evidence sufficient to carry his burden of proof. According to Texas law, the issues were properly raised and actually litigated; accordingly, we find they were fully and fairly litigated for collateral estoppel purposes.

*Garner v. Lehrer* (*In re Garner*), 56 F.3d 677, 680 (5th Cir.1995).

Subsequent to *Garner v. Lehrer,* the Fifth Circuit appears to have dropped the distinction between a "simple default" and a "post-answer default" for collateral estoppel purposes. In *Pancake v. Reliance Insurance Co.* (*In re Pancake*), 106 F.3d 1242 (5th Cir.1997), Pancake, a bank loan officer, was accused by Reliance of loaning money to borrowers that he knew to be poor credit risks in exchange for kickbacks. Reliance, a surety for the bank, sued Pancake in state court alleging fraud. Pancake filed an answer which was stricken because he had failed to comply with certain discovery orders. Pancake did not appear at trial and a default judgment was entered against him. When Pancake subsequently filed bankruptcy, Reliance filed its complaint to determine the dischargeability of the default judgment. The bankruptcy court granted summary judgment for Reliance. On appeal, the district court reversed, stating that the default judgment was not entitled to preclusive effect. The Fifth Circuit affirmed the district court, concluding that preclusive effect could not be given to the state court judgment because it was unclear from the record whether or not an evidentiary hearing was held in which Reliance was required to meet its burden of proof. "The only indication that the state court held a hearing comes from the final judgment, in which the court states that it heard 'the evidence and arguments of counsel.' That statement alone does not establish that Pancake received a full and fair adjudication on the issue of fraud." *Id.* at 1244. The court went on to state that the nature of a default judgment is immaterial for collateral estoppel purposes so long as the record reflects that an evidentiary hearing was conducted, and the plaintiff's burden of proof was met.

For purposes of collateral estoppel...the critical inquiry is not directed at the nature of the default judgment, but, rather, one must focus on whether an issue was fully and fairly litigated.

Thus, even though Pancake's answer was struck, if Reliance can produce record evidence that the state court conducted a hearing in which Reliance was put to its evidentiary burden, collateral estoppel may be found to be appropriate. *Id.* at 1245.

*In re Evans,* 252 B.R. 366, 369–70 (Bkrtcy. N.D.Miss.2000). See also, *In re O'Neill,* 260 B.R. 122 (Bkrtcy.E.D.Tx.2001) applying the standards of *Pancake.*

The Tenth Circuit, authority for the Oklahoma Courts in which the default judgment was obtained, discussed the parameters of what constitutes a matter being "fully and fairly litigated":

> "In *Jordan Bus Co.,* we [the Tenth Circuit Court] concluded that the respondent had received a meaningful opportunity to prepare and present its case. *See NLRB v. Jordan Bus Co.,* 380 F.2d 219, 224 (10th Cir.1967). In that case . . . the respondent was afforded actual notice in time to present evidence on the issue at the evidentiary hearing. See *id.* at 223. Because the respondent had actual notice prior to the evidentiary hearing, we proceeded to determine whether the evidentiary record was complete with regard to the challenged issue and whether any prejudice to the respondent resulted."

*N.L.R.B. v. I.W.G., Inc.,* 144 F.3d 685, 688 (10th Cir.1998).

■ Whether this Court applies the Fifth Circuit standard or the Tenth Circuit standard, the result will be the same. The undisputed facts before this Court are that following the entry of the default judgment, an evidentiary hearing was conducted by the Court on damages. Edwards was properly served but failed to appear. The Judgment Awarding Exemplary Damages recites that "After reviewing the court file, and *hearing the evidence* and arguments of the plaintiff, the Court finds . . . ." [emphasis added]. Unlike the Pancake facts, the Judgment against Edwards indicates that the Court took oral testimony, it names the witnesses called and mentions documentary evidence offered. From this part of the record, this Court must find that THC met its evidentiary burden in the Oklahoma District Court.

This Court must give full faith and credit to the findings of the Oklahoma Court. The Court found most specifically (Page 2, Para. 3 of the Judgment): "Mark Edwards acted intentionally and with malice towards Mid–Continent as provided in 23 Okla. Stat. § 9.1 . . .". The Court entered the Judgment as a final judgment.[9] It is

9. 23 Okl.St.Ann. § 9.1—[OKLAHOMA STATUTES ANNOTATED TITLE 23. DAMAGES— CHAPTER 1. DAMAGES IN GENERAL]
§ 9.1. Exemplary damages awards by jury
A. In an action for the breach of an obligation not arising from contract, the jury, in addition to actual damages, may, subject to the provisions and limitations in subsections B, C and D of this section, give damages for the sake of example and by way of punishing the defendant based upon the following factors: the seriousness of the hazard to the public arising from the defendant's misconduct; the profitability of the misconduct to the defendant; the duration of the misconduct and any concealment of it; the degree of the defendant's awareness of the hazard and

of its excessiveness; the attitude and conduct of the defendant upon discovery of the misconduct or hazard; in the case of a defendant which is a corporation or other entity, the number and level of employees involved in causing or concealing the misconduct; and the financial condition of the defendant.
B. Category I. Where the jury finds by clear and convincing evidence that the defendant has been guilty of reckless disregard for the rights of others, or an insurer has recklessly disregarded its duty to deal fairly and act in good faith with its insured, the jury, in a separate proceeding conducted after the jury has made such finding and awarded actual damages, may award exemplary damages in an amount not to exceed the greater of:

true that the Oklahoma Court did not use the word "willful" but referred to Edward's actions as "intentional." If one analyzes this language under the standards used by the Fifth Circuit in *Miller* and *Delaney*, it is clear that Edward's actions are "willful and malicious." The Court found that Edwards intentionally diverted the sub-contractor's funds. He had to intend or know for an absolute certainty that they would suffer the exact damage they have suffered as a result of that act. Had Edwards had a reasonable defense to the allegations against him, the time to have presented and argued his case was at the trial, at the evidentiary hearing or on appeal in a timely fashion. The evidence before this Court is that the matter was "fully and fairly litigated" and that the Defendant had ample opportunity to participate and chose not to do so.

### CONCLUSION

At the Oklahoma court's hearing on exemplary damages, the Court took both oral testimony and documentary evidence and found that Edwards acted "intentionally and with malice towards Mid–Continent..." ( *Judgment Awarding Exemplary damages, Ex. 3C to the Plaintiff's Motion for Summary Judgment, at para. 3.)* causing THC to incur damage. This Court has no choice but to give full faith and credit to the findings of the Oklahoma court. The Defendant, Mark A. Edwards, has not appealed that ruling and it is now a final ruling. There has been a clear statement from the Oklahoma court that

1. One Hundred Thousand Dollars ($100,000.00); or
2. The amount of the actual damages awarded.

C. Category II. Where the jury finds by clear and convincing evidence that:

1. The defendant has acted intentionally and with malice towards others; or
2. An insurer has intentionally and with malice breached its duty to deal fairly and act in good faith with its insured, the jury, in a separate proceeding conducted after the jury has made such finding and awarded actual damages, may award exemplary damages in an amount not to exceed the greatest of:

 a. Five Hundred Thousand Dollars ($500,000.00),
 b. twice the amount of actual damages awarded, or

c. the increased financial benefit derived by the defendant or insurer as a direct result of the conduct causing the injury to the plaintiff and other persons or entities.

The trial court shall reduce any award for punitive damages awarded pursuant to the provisions of subparagraph c of this paragraph by the amount it finds the defendant or insurer has previously paid as a result of all punitive damage verdicts entered in any court of the State of Oklahoma for the same conduct by the defendant or insurer.

D. Category III. Where the jury finds by clear and convincing evidence that:

1. The defendant has acted intentionally and with malice towards others; or
2. An insurer has intentionally and with malice breached its duty to deal fairly and act in good faith with its insured, and the court finds, on the record and out of the presence of the jury, that there is evidence beyond a reasonable doubt that the defendant or insurer acted intentionally and with malice and engaged in conduct life-threatening to humans, the jury, in a separate proceeding conducted after the jury has made such finding and awarded actual damages, may award exemplary damages in any amount the jury deems appropriate, without regard to the limitations set forth in subsections B and C of this section.

E. In determining the amount, if any, of exemplary damages to be awarded under either subsection B, C or D of this section, the jury shall make the award based upon the factors set forth in subsection A of this section.

F. The provisions of this section are severable, and if any part or provision thereof shall be held void, the decision of the court shall not affect or impair any of the remaining parts or provisions thereof.

G. This section shall apply to all civil actions filed after the effective date of this act.

the Plaintiff was put to its burden of proving the essential element that must be proven in this adversary proceeding on the § 523(a)(6) claim: that the debt arose because of the intentional, i.e. willful, and malicious acts of the Debtor. The Oklahoma court's judgment is preclusive on the issue of whether there were willful and malicious acts by the debtor, and, therefore, it is preclusive on the non-dischargeability of the debt to THC. The issues Mr. Edwards has raised are not material issues that might result in an alternative ruling. This Court need not re-litigate such issues. The Plaintiff has met its burden and the relief requested by the Plaintiff, must be GRANTED.[10] Granting the summary judgment that the debt of Mark Edwards to THC is non-dischargeable under § 523(a)(6) renders moot any outstanding issues related to § 523(a)(2)(A) and (a)(4). An order will be entered accordingly.

---

**10.** There may be a material fact as to whether Mr. Edwards has paid a part of the debt and whether he is entitled to credit against the debt for such payment. This Court does not have to make such a determination. The only determination this Court is required to make is that the debt is non-dischargeable. If Mr. Edwards has proof of discharge of a portion of the debt by payment, then in any subsequent action The Hardesty Company takes to enforce its non-dischargeable debt, Mr. Edwards can raise that defense and that court of competent jurisdiction can determine whether such payments have been made.